Certiorari was allowed to review the determination of the Cape May County Court affirming an award in the Workmen's Compensation Bureau in favor of petitioner-respondent, for disability resulting from an accident which was alleged to have arisen out of and in the course of his employment by the defendant-appellant, on February 2, 1946.
The accident and the injury to respondent are not controverted. Two questions were raised at the hearing and argued here, namely: (1) Was petitioner an employee of the defendant? (2) Did petitioner sustain an accident arising out of and in the course of his employment?
The answer to both questions is to be found in the testimony of petitioner, much of which was not denied. Petitioner had a truck and defendant through its superintendent, engaged him to work 8 hours a day for 6 days a week at a fixed amount. Petitioner testified that he did hauling, as he was directed by the persons having authority to direct employees as to their *Page 10 
duties and that he performed whatever work he was directed to do. The superintendent of construction for defendant, Henry Witte, testified that he hired petitioner. On direct examination he testified:
"Q. Did you hire George Mayo? A. Yes * * *.
"Q. What did you hire him to do? A. Well, to do general hauling.
"Q. What did he have that induced you, if anything, to hire him? A. He had a truck. I hired him and the truck.
"Q. At what price? A. $40.00 a week.
"Q. Now, did he perform his work of hauling? A. Yes.
"Q. Who told him what to do? A. Well, I told him or my foreman.
"Q. Now, did you ever tell him how to do it? A. No. Well, sure I told him how to do it if there was anything particular to do, but his general work was to haul anything that we might need. * * *
"Q. Now, in addition to general hauling, did he do any other work? A. Well, he helped to clean up around when there wasn't any hauling to do.
"Q. So that while he may not have had a specific number of loads he had to haul, he was working 8 hours a day? A. Working 8 hours a day, yes."
He further testified that Mayo did various jobs for defendant, hauling chairs from defendant's theatres to churches and firewood to the farm of Mr. William C. Hunt. The witness was asked on cross-examination:
"Q. Is it not a fact he was at the beck and call of the Hunt's Theatres' officers whenever they wanted him to do something, he did it? A. He was under my employ, but if they asked him to do anything, I guess he went right ahead and done it."
This testimony supports the testimony of petitioner that he was employed to work for the Hunt's Theatres, Inc. to do hauling with his truck and such other work as Mr. Witte and *Page 11 
others in authority directed him to do. He was paid on a weekly basis, receiving a check each Friday, with the other employees of defendant.
Defendant urges that petitioner was not included in the list of employees whose compensation was subject to deductions for unemployment compensation, social security, etc. This, however, was a matter for the employer to take care of. The employment began in October, 1945, and ceased on February 2, 1946, and, if required, may have been an oversight of defendant.
From the testimony it appears that the relationship of master and servant existed in this case. In Errickson v. Schwiers Co.,108 N.J.L. 481 (Sup.Ct. 1932), it was said: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done." See Burdickv. Liberty Motor Freight Lines, 128 N.J. Law 229 (Sup.Ct.
1942). To the same effect is Wadge v. Crestwood Acres, Inc.,20 N.J. Misc. 188, 128 N.J.L. 551 (Sup.Ct. 1942); aff.129 N.J. Law 400 (E. A. 1942); El v. Newark Star-Ledger,131 N.J. Law 373, (Sup.Ct. 1944).
It follows that the determinations of the Bureau and of the County Court were amply supported by the testimony, and we conclude that the relationship of master and servant existed in this case.
Did the injury sustained by petitioner result from an accident arising out of and in the course of his employment?
Petitioner testified that he reported to work at 8:00 o'clock in the morning and worked to 4:30, sometimes to 5:00 in the afternoon; that he stopped at 12:00 o'clock for lunch; that he drove the truck to his home, had his lunch and left his home about 12:25 to return to work at 12:30 o'clock. On the day in question, he went home for lunch and remained a time thereafter to repair the muffler on his truck; that his superior knew of the condition and that he had told petitioner *Page 12 
to stop at the Wildwood Trust Company and remove some trash, and then return to one of the defendant's theatres and clean it, and then to get some chairs at one theatre and take them to the theatre he was to clean. Mr. Hunt, the head of the defendant corporation, testified that he told petitioner to take up the rubbish at the bank; that he did not recall telling him he would be paid for that particular work. It would appear that petitioner was doing such work in the line of his employment for defendant and not for the bank. He was accustomed to do whatever he was directed to do by those in authority of the theatres, and, certainly, Mr. Hunt was such authority.
Defendant lays stress upon a statement alleged to have been made to an investigator for an insurance company, which contained a written statement signed by petitioner that he was to be paid $5 per week by the bank for removing trash therefrom. The statement was taken and signed a short time after the accident and the petitioner testified that his condition was such that he hardly knew what was taking place. He acknowledged signing the paper but denied having made the statement about compensation by the bank or knowing that it was in the statement signed by him. No one was produced to testify concerning the statements made by petitioner, and the only testimony with respect to any payment being made by the bank for the collection of rubbish was by Mr. Hunt, who testified that one McNeil, who did the work until about two weeks before petitioner was directed to pick it up, was paid $5 per week. As stated above, Mr. Hunt did not recall saying anything about payment to petitioner for such work, but merely directed him to stop at the bank to pick up accumulated rubbish. If any arrangement for separate employment by the bank had been made, certainly some one would have testified to it.
Petitioner left his home to go to the bank, and, as he passed over a railroad crossing was struck by a locomotive engine and was injured. If he was on a mission directed by his employer, and not separated by some understanding or employment from his usual employment, he was in the course of his employment *Page 13 
with defendant. The absence of proof to the contrary, supports petitioner's claim, and we conclude that his injuries resulted from an accident arising out of and in the course of his employment.
The judgment under review is affirmed, with costs.