ELIZABETH A. WILSON, INDIVIDUALLY AND AS EXECU-
TRIX OF THE ESTATE OF EDWARD C. WILSON, PETI-
TIONER-APPELLANT, v. KELLEHER MOTOR FREIGHT
LINES, INC., A MISSOURI CORPORATION LICENSED
TO DO BUSINESS IN NEW JERSEY, RESPONDENT-
RESPONDENT.

Argued March 23, 1953—Decided May 4, 1953.

Mr. *Herbert J. Kenarik* argued the cause for appellant.

Mr. *Arthur J. Blake* argued the cause for respondent (*Messrs. Emory, Langan & Lamb,* attorneys; *Mr. James J. Langan,* on the brief).

The opinion of the court was delivered by
WACHENFELD, J. We granted certification to review the reversal by the Appellate Division of a determination in favor of the petitioner in the Workmen's Compensation Bureau. The question is whether or not the decedent, petitioner's husband, was an employee of the respondent at the time of his accidental death.

Kelleher Motor Freight Lines, Inc., is a trucking concern engaged in interstate commerce. Edward Wilson, the petitioner's husband, was an independent trucker who operated

his own tractor-trailer unit and responded to Kelleher's call to a truck stop for some one to haul freight from the respondent's depot in Newark to its depot in Chicago. While en route, Wilson was killed in Indiana on August 23, 1950.

The Bureau granted compensation, holding him to have been an employee, while the Appellate Division reversed, classifying him as an independent contractor.

In accordance with the custom of the trade, the respondent had "called up" decedent at a lot where free-lance truckers were in the habit of congregating to receive such calls. Respondent's purpose was to "lease" decedent's unit for a single trip from its terminal in Newark to its terminal in Chicago. The decedent signed an agreement covering the leasing of his equipment which provided, amongst other things: "The term of lease shall be the duration of one single outbound trip * * *." A fee was to be paid to the lessor "for the use of the above-described equipment on the single trip" on the basis of equipment rented and allowance for turnpike toll.

The lessor was obliged to pay all fines incurred for overload, overweight, overlength, absence of permits or plates, and traffic violations. No moneys were withheld by the respondent for income tax, social security or unemployment compensation.

The decedent drove under the I. C. C. rights of the respondent, and the record reveals he had driven on similar trips for the company on at least three previous occasions.

Petitioner relies principally on paragraph 6 of the agreement, which provides: "* * * while the foregoing equipment is under the direction and control of Kelleher Motor Freight Lines, Inc., that it shall be operated only by the lessor or his representative while in the employ of the Kelleher Motor Freight Lines, Inc."

The contract apparently was an attempt to conform with the I. C. C. regulations, but other than this one factor there seems to be no evidence of control over the conduct of the decedent during the trip evincing the relationship of employer and employee.

■ An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods and without being subject to the control of his employer as to the means by which the result is to be accomplished but only as to the result of the work. *Errickson v. Schwiers Co.*, 108 *N. J. L.* 481 (*E. & A.* 1932).

■ The relationship of master and servant exists "whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done. * * *" *Cappadonna v. Passaic Motors, Inc.*, 136 *N. J. L.* 299 (*Sup. Ct.* 1947).

The difference between the two rules and the determinative factor, according to all the adjudications, is the control retained. It is the criterion by which each case is determined.

In *Busch v. Seaboard By-Product Coke Co.*, 100 *N. J. L.* 304 (*E. & A.* 1924), the court, in deciding the operator of a truck was not an employee, said:

"* * * the seaboard company did not own the truck, or hire the driver, or pay him, or control him or the operation of the truck in any way. beyond loading it at the plant and giving the driver the address of its destination."

Coming to a like conclusion in *Procopio v. Foss & Voight, Inc.*, 10 *N. J. Super.* 504 (*Cty. Ct.* 1950), emphasizing many of the facts present in the case *sub judice*, the court held:

"It is apparent that petitioner was paid for the trucking he did and not for his own services. The respondent had no control over what truck he used or how he operated it. It paid for the tonnage transported regardless of who actually drove the truck."

In *Cappadonna v. Passaic Motors, Inc., supra*, the court observed the petitioner "was perfectly free as to the means by which the result would be accomplished. The injured man was never carried on the payroll and he was paid each week for the days he had worked. He was never supervised or controlled in any way. No deductions were made for Social Security nor for unemployment compensation. He was employed to complete the carpentry work on a new project."

█ Imbedded in the reasoning in all similar litigation is the element of control, and in the cause before us the record seems to negative dominion by the company over the decedent as an individual workman. He was paid no wages as ordinarily understood; there were no customary deductions for income tax or social security characteristic of the usual employment; and there was no right of direction as to how his work should be done.

Giving liberal construction to the Compensation Act, nevertheless the totality of the proof submitted here seems persuasively to establish the existence of an independent contract.

Solace is sought by the appellant in *Burdick v. Liberty Motor Freight Lines, Inc.*, 128 *N. J. L.* 229 (*Sup. Ct.* 1942), and *American Carrier Corp. v. Avigliano*, 123 *N. J. L.* 490 (*Sup. Ct.* 1939). We think, however, they are readily distinguishable. In the *Burdick* case, although the compensation was stipulated as so much per ton, there was a distinct provision that the equipment was under the complete control of the company to the exclusion of all other parties, including the owner, and that the lessor should furnish drivers and helpers who were at all times to be subject to the control, management, direction and orders of the company. Workmen's compensation insurance, social security and unemployment insurance were provided for and the route to be taken was prescribed by the owner.

In *American Carrier Corp. v. Avigliano, supra,* the owner of the truck was required to purchase it and "It further appeared that the company officials prescribed the route, loaded the truck by their own employes and sent an employe with him."

█ In addition to the clause in the lease agreement referred to above, the petitioner urges the I. C. C. administrative rulings sustain her contention. One regulation has been in effect since 1936 and provides where a carrier leases automotive equipment, its operation must be conducted "under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employees

of the authorized operator, that is to say, who stand in the relation of servant to him as master."

Our attention is also called to new I. C. C. rules not in effect at the time of this accident, requiring amongst other things that the driver of the leased equipment be an employee of the carrier. Other than to be indicative of the policy of the administrative agency promulgating the rules, they can have no bearing upon the issues to be decided here. Even if regarded, they could not alter or control the facts as they actually existed between the immediate parties involved. The determination of the legal relationship established depends upon the facts in the particular case pending and no variation automatically occurs merely because an administrative agency's regulations are contravened.

There is no merit to the objection as to the allowance of costs granted below. Costs were awarded to the successful party in accordance with our rules. Whether or not a substantial question was involved was wholly immaterial.

The judgment is affirmed, but without costs.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BRENNAN—4.

*For reversal*—Justices HEHER, BURLING and JACOBS—3.