31 N.J. Super. 314 (1954)
106 A.2d 312
RUTH GALLER, INDIVIDUALLY, ETC., PARTNERS TRADING AS GALLER 7 UP BOTTLING COMPANY, PLAINTIFFS-RESPONDENTS,
v.
CHARLES SLURZBERG, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1954.
Decided June 25, 1954.
*316 Before Judges CLAPP, SMALLEY and SCHETTINO.
Mr. Joseph A. Davis of Messrs. O'Mara, Schumann, Davis & Lynch, argued the cause for plaintiffs-respondents (Mr. William A. Kaufmann, attorney).
Mr. Abraham J. Slurzberg argued the cause for defendants-appellants (Mr. August W. Heckman, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Appeal is taken from a final judgment and order granting plaintiff injunctive relief against picketing and other activities by the 27 individual defendants. Interlocutory injunctions had theretofore issued, and litigation thereon is reported in 22 N.J. Super. 477 (App. Div. 1952) and 27 N.J. Super. 139 (App. Div. 1953).
For an obvious reason the final injunctions cannot be sustained. There is nothing to indicate that, had relief been *317 withheld, the defendants would probably have done that which was enjoined. Meyer v. Somerville Water Co., 82 N.J. Eq. 572, 577 (Ch. 1914). Cf., too, N.J.S. 2A:15-53(b). Moreover, no activities of the sort enjoined had been carried on except for two periods, one of them three-quarters of a year, and the other a year and a half, before the final injunctions issued. An injunction is turned toward future mischief; its office is not to punish for the past. Bayonne Textile Corp. v. American, etc., Silk Workers, 116 N.J. Eq. 146, 164 (E. & A. 1934).
There must be a reversal on this ground. However we have decided not to rest our decision solely upon it. Aside from the fact that we have not had the benefit of argument on the matter (though we pressed the point on the oral argument), we cannot but be aware of the tensions exhibited here that may bespeak things not shown by the record. Besides, the question which occasioned 207 pages of brief and a 1,172-page appendix, with which we have been favored, not to speak of a final hearing lasting 22 days, seems to be involved in important phases of this litigation still pending below.
This question to which we allude is whether  as held by this court in connection with the interlocutory injunction, 22 N.J. Super. 477, supra  the defendants are employees; or whether  as found by the trial court on the final hearing below  they are independent contractors. The question comes before us in this way: plaintiff argues that defendants are not employees, as that term is used in the Anti-Injunction Act, N.J.S. 2A:15-51 to 2A:15-58, and that therefore that statute is not a bar to the injunctions here. Outdoor Sports Corp. v. A.F. of L., Local 23132, 6 N.J. 217 (1951). Plaintiff suggests additional theories which might sustain the injunctive relief granted and asks for further argument thereon, should we find its present contention invalid. Defendants do not deal with these theories. In view of plaintiff's failure to establish any threats by defendants or other circumstances warranting injunctive relief  the matter first *318 mentioned in this opinion  we will not deal with these theories or with questions we have as to the activities enjoined, other than picketing, concerning which the briefs are silent.
We address ourselves then to the question which led the parties and the court below to make this big record  were the defendants employees?
Plaintiff is a partnership selling a soft drink, 7 Up, in certain counties of this State under an exclusive franchise granted by a national concern. Defendants were salesmen, each handling a route or routes within plaintiff's territory. The relationship between plaintiff and defendant was defined to some extent in a contract made in 1950 between plaintiff and an American Federation of Labor union which then represented defendants.
Out of the mass of factual detail bearing upon the question, we shall  endeavoring not to repeat what we said in 22 N.J. Super. 477, supra  set out, first, the factors relied upon to establish that defendants are independent contractors:
1. Right to discharge. Plaintiff contends it did not have the employer's usual redress (Courtinard v. Gray Burial, etc., Co., 98 N.J.L. 493, 495 (E. & A. 1923); Geary v. Simon Dairy Products Co., 7 N.J. Super. 88, 93 (App. Div. 1950)) against an employee who rejects instructions  namely, of discharging him. However, a very substantial part of the defendants' activities was regulated by the 1950 contract, and for default in its terms by a defendant, the plaintiff could, at will, as noted 22 N.J. Super., at p. 488, supra, terminate the contract as to him. As to defendants' actions not so regulated, the contention has some force; but, limited as it is to them, it is by no means dispositive. We may ask further, without passing on it, is it our law that to constitute a relationship one of employment, it must be at will? In other words, cannot a person still be an employee, though he is under contract for a term during which he cannot be discharged? U.S. v. Wholesale Oil Co., 154 F.2d 745, 749 *319 (C.C.A. 10 1946); In re Pacific Nat. Life Assur. Co., 70 Idaho 98, 212 P.2d 397 (Sup. Ct. 1949); Kehrer v. Industrial Com'n, 365 Ill. 378, 6 N.E.2d 635 (Sup. Ct. 1937); Balfour v. Dohrn Transfer Co., 328 Ill. App. 163, 65 N.E.2d 624 (App. Ct. 1946); contra see Rozran v. Durkin, 381 Ill. 97, 45 N.E.2d 180 (Sup. Ct. 1942); cf. 56 C.J.S., Master and Servant, § 2, pp. 35, 36.
2. The so-called mortmain clause. A clause in the 1950 contract permits the legal representative of a deceased defendant to nominate his successor. This, plaintiff contends, is "the most powerful and irrefutable indication" that the defendants were not employees. Our court took note of that clause when reaching a contrary conclusion. 22 N.J. Super., at page 489, supra. The legal representative has, indeed, authority to designate a successor, provided  and this is the flaw in the contention  the person designated is suitable to the plaintiff. For practical purposes, this leaves the plaintiff with an absolute control over the matter.
3. The sub-employees. Several defendants, less than half of them, each had a driver or drivers assisting him. See 22 N.J. Super., at page 493, supra. Not only did he pay his driver as noticed in our earlier opinion, but from this pay he as an employer made withholdings required by the income tax and social security laws. However, the circumstances of this sub-relationship do not clearly indicate that defendants are independent contractors. For one thing, the drivers were subject to the same supervision as the defendants. Further, the actual hiring of a driver seems to have been left to the plaintiff. Still more significant is the fact that if one of these "sub-employees" did not meet with plaintiff's approval, he had to be dismissed, somewhat as appears in Lewis v. National Cash Register Co., 84 N.J.L. 598, 600 (Sup. Ct. 1913). Cf. Toner v. International, etc., Atlantic City, 113 N.J.L. 29 (E. & A. 1934).
4. Compensation. The matter of compensation is sufficiently dealt with in 22 N.J. Super., at page 492, supra. Further see Jack and Jill, Inc. v. Tone, 126 Conn. 114, 9 *320 A.2d 497, 499 (Sup. Ct. Err. 1939); Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395, 397 (Sup. Ct. 1943); cf. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); People v. Gassman, 295 N.Y. 254, 66 N.E.2d 705, 166 A.L.R. 154 (Ct. App. 1946). Plaintiff points out that it at times paid bonuses and gratuities to persons it acknowledged to be its employees, but not to defendants. This is not of great significance.
5. The delivery trucks. The trucks owned by defendants, registered in their names and on which they paid registration fees and insurance, are also dealt with in the opinion. 22 N.J. Super., at page 492, supra. Further see Milwaukee News Co. v. Industrial Commission, 224 Wis. 130, 271 N.W. 78 (Sup. Ct. 1937); Restatement of Agency, § 220, comment (g). Under a fleet policy covering most defendants, the plaintiff also was insured for any liability it might incur under the doctrine of respondeat superior with respect to the operation of the trucks. However, plaintiff apparently paid no premium for this insurance.
6. The parties' beliefs as to the relationship. Plaintiff deemed itself not to be defendants' employer, and so made no withholdings in conformity with the income tax, social security and unemployment compensation laws. On the other hand, defendants, as disclosed in certain of their income tax returns, and in nearly all of their applications for drivers' licenses, regarded themselves as self-employed. This is part of a scheme expressly provided for in the 1950 contract and the accompanying regulations by which plaintiff in mandatory terms sought to determine the status of the parties. While these matters are factors, Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 265 (1953); Geary v. Simon Dairy Products Co., 7 N.J. Super. 88, 91 (App. Div. 1950), supra, they are not determinative. 22 N.J. Super., at page 487, supra; Mayo v. Hunt's Theatres, 1 N.J. Super. 8, 11 (App. Div. 1948); O'Brien v. Washington National Insurance Co., 17 N.J. Super. 549, 555 (Cty. *321 Ct. 1952); Downs v. Baltimore & Ohio R. Co., 345 Ill. App. 118, 102 N.E.2d 537, 542, 30 A.L.R.2d 503 (App. Ct. 1952); Restatement of Agency, § 220, comment (i).
7. Miscellaneous matters. Credit by defendant. Plaintiff stresses the fact that defendants could give personal credit to a customer. However, though there is some general testimony on the point, quite naturally the defendants in fact extended little credit.
Defendants charged for merchandise. Plaintiff points out that defendants determined the quantity of merchandise to be placed on their trucks daily and were personally chargeable for it when the trucks left the plant each morning. However, in the evening they were credited with merchandise returned.
Bonds. The defendants were not bonded, unlike other persons doing somewhat similar work, who were clearly employees.
License. One of the defendants needed a health license to drive a vehicle for the peddling of food in one community, and he paid for it himself.
None of these matters is of great significance.
8. Exceptional situations. Plaintiff lays much stress  and so did the trial court  upon the fact that one of the defendants never drove a truck and another, for some years a city commissioner of Hoboken, had not driven his truck while holding office. These defendants employed others (some of the sub-employees above mentioned) to handle their routes. Very apparently plaintiff made exceptions with respect to these two men. Other exceptional situations arose as to two defendants while in military service. See Carlson v. Hannah, 6 N.J. 202 (1951). The status of the group is not determined by the status of these exceptional cases.
So much for the circumstances upon which plaintiff relies most heavily. Next we shall state the factors indicating that defendants are employees:
1. Supervisors and the matter of control. Plaintiff employed supervisors who were, as one of them agreed, "part of the *322 chain of command" in the business. They inspected the defendants' personal appearance, their clothes and trucks and other details, and they rode with various defendants daily for the purpose of checking upon their efficiency. As plaintiff stresses, the object obviously was to increase sales. There was some testimony  though it was strongly contradicted  that the supervisors turned in daily reports on defendants' appearance, etc.; at any event such reports were made at one time and the status of the defendants seems not to have changed materially since then. Plaintiff insists strenuously that the supervisors merely counselled the defendants and made suggestions to them. It is quite apparent that the "counsellings" brought the results wanted. In actuality, plaintiff's supervisors saw to it that defendants performed every detail of the work as plaintiff wished it done.
2. Time given to job and demands upon defendants. The defendants were required by the contract to devote full time to their job. Unlike the usual independent contractor, they could not designate another to perform their assignments; by force of the 1950 contract, theirs was a non-delegable task. The contract required them to use their trucks for the distribution of plaintiff's beverage and for no other purpose, and it prevented them from selling other beverages. The plaintiff had the defendants report at 8:00 A.M. or, at the latest, 8:30, except during the summertime when they had to come in between 7:30 and 8:00. Though defendants did not "punch a clock" as did the persons plaintiff acknowledges were its employees, a "check-in" board was maintained for defendants at an advertising counter and it could have served much the same purpose. Because of schedules fixed for the loading of the trucks, plaintiff generally had defendants return their trucks at a deadline, namely, 4:30 P.M., or, in the summer months, 5:30. All but two of the defendants were required to garage their trucks in the plaintiff's garage. Once the trucks had come in at night, defendants could not take them out except by leave of plaintiff. Tobin v. Anthony-Williams Mfg. Co., 196 F.2d 547, 550 (8 Cir., *323 1952). Defendants were given, indeed compelled to take, an annual two weeks' vacation.
3. Plaintiff's, not Defendants', Customers. The customers clearly were "company customers," not defendants' customers. For one thing, the fact that plaintiff extended credit to trustworthy accounts is a strong indication that defendants were serving plaintiff's customers. Shields v. William Freihofer Baking Co., 147 Pa. Super. 455, 24 A.2d 54, 56 (Super. Ct. 1942).
Though customers seem to have paid usually in cash, nevertheless when they did give checks, the checks were drawn to the order of the plaintiff, not defendants. Customers occasionally ordered merchandise directly from the plaintiff, and when they had complaints, they phoned plaintiff.
4. Uniform practices. The plaintiff had defendants adhere to a uniform regime. A pattern of conformity shows up in diverse situations, including the design and color of defendants' trucks; the uniforms bearing company emblems, which plaintiff provided; the sales slips on which, incidentally, was printed plaintiff's name as the apparent seller (though defendants paid for the slips); the standardized sales technique, sales training programs and weekly "peptalk" meetings; such matters as shoe shines and shaves; and even salutations ("Good morning, 7 Up man") and demeanor (a "7 Up personality"). The activities of the defendants were integrated to a remarkable degree into the plaintiff's affairs and, through the plaintiff, into the program of the national concern. As part of the system, defendants were for all practical purposes required to do a number of things to assist plaintiff's business, and thereby the defendants' interests as well, such as: the taking of periodic inventories of customers' supplies; the servicing of customers uniformly one day a week; the keeping of route books which were company property and, in effect, a "company record;" and the distribution of advertising and promotion material, supplied by plaintiff.
*324 It must be emphasized that no one factor is dispositive; the determination here rests upon the "total situation." Bartels v. Birmingham, 332 U.S. 126, 130 (1947). However, as we held (22 N.J. Super., at page 487, supra), the most important single factor is whether the alleged employer retains the right to direct the manner in which the work shall be carried on. Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (1953), supra; Wadge v. Crestwood Acres, Inc., 128 N.J.L. 551, 554 (Sup. Ct. 1942), affirmed 129 N.J.L. 400 (E. & A. 1943). An employee does not become an independent contractor because the control over him is spelled out in a contract between him and his employer. King v. Southwestern Greyhound Lines, Inc., 169 F.2d 497, 500 (C.C.A. 10 1948).
The Restatement of Agency § 220 makes this matter of control the dispositive criterion. But the reporter has himself deprecated the test as a good one for easy cases, one which must be applied with a "sophisticated discretion." Mechem, Outlines of Agency (4th ed. 1952), §§ 427, 431. In this case, however, to an extent required of few employees, defendants carried out the will of the plaintiff, not only with respect to the result, but also with respect to the means by which the result was accomplished. These defendants, so-called independent contractors, worked in uniforms and were required to be in at a fixed time in the morning; they were checked not only as to how they did their work, but as to whether they were shaved and whether their shoes were shined. They were in fact made to bend to the company's will in the veriest detail.
Cases in other jurisdictions of interest on a number of aspects of the present problem are In re Morton, 284 N.Y. 167, 30 N.E.2d 369 (Ct. App. 1940); Jack and Jill, Inc. v. Tone, 126 Conn. 114, 9 A.2d 497 (Sup. Ct. Err. 1939), supra; Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395 (Sup. Ct. 1943), supra; Frank v. Sinclair Refining Co., 363 Mo. 1054, 256 S.W.2d 793 (Sup. *325 Ct. 1953); Texas Co. v. Zeigler, 177 Va. 557, 14 S.E.2d 704 (Sup. Ct. App. 1941).
The term "employee," as used in the Anti-Injunction Act, carries with it a common law significance, but it must of course be looked at in the light of the mischief sought to be remedied by the act. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 126, 64 S.Ct. 851 (1944), supra. It has been urged that the test under this act as to whether a person is an employee should be whether or not he is engaged in an independent calling, Wolfe, Employer-Employee Relationships, 41 Columbia L. Rev. 1015, 1035 (1941), Asia, Employment Relation, 55 Yale L.J. 76, 81 (1945), or in other words whether his services are an integral part of the employer's business, Rutherford Food Corp. v. McComb, 331 U.S. 722, 726, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), Teple, Employer-Employee Relationship, 10 Ohio L.J. 153, 178 (1949). Without passing on the point, we may say, applying this test, that we find defendants here were clearly an integral part of plaintiff's business; theirs surely was not an independent calling.
Indeed, we are left with the strong impression that there was an entire falsity about the claim, no doubt an invention of the plaintiff, that defendants were independent contractors. Cf. Electrolux Corp. v. Board of Review, 129 N.J.L. 154, 155 (E. & A. 1942). In an endeavor to make good on that claim, some things were done which give some substance to it. However, other circumstances, which we think clearly predominate, indicate that defendants were in actuality employees.
As we held in 27 N.J. Super., at page 147, supra, the dispute here, principally over compensation paid to employees, is a proper object of concerted action. It constitutes a labor dispute within the meaning of N.J.S. 2A:15-51. See N.J.S. 2A:15-58. Therefore, we hold on the basis of the arguments developed here, that the injunctions should not have issued.
*326 Much is said in the defendants' brief upon the "law of the case," as that law was stated in 22 N.J. Super. 477, supra. The argument is that what we said there in disposing of a preliminary injunction, is not subject to reexamination when we pass upon the final injunction. But see Walker Memorial Baptist Church v. Saunders, 285 N.Y. 462, 35 N.E.2d 42, 47 (Ct. App. 1941); 21 C.J.S., Courts, § 195, p. 335; R.R. 4:55-2. Moreover, in 22 N.J. Super. 477 (see at page 494) and 27 N.J. Super. 139 (see at page 145), we were dealing with only a paper record. In view of our conclusions, we need not pass upon the argument. However, we find our previous decisions, so far as pertinent to the facts now before us, to be very persuasive. There must, of course, be every endeavor to achieve a unity of decision among the parts of the Appellate Division. 21 C.J.S., Courts, § 198, p. 351.
The judgment and order granting injunctive relief will be reversed with costs, including, as usual (see R.R. 1:9-2), the cost of the transcript.
Reversed.