61 N.J. Super. 386 (1960)
160 A.2d 867
MICHAEL ANDRYISHYN, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ODELL BALLINGER, DEFENDANT-RESPONDENT, AND BAYONNE BLOCK CO., INC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1960.
Decided May 16, 1960.
*389 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Raymond Chasan argued the cause for plaintiff-respondent and cross-appellant (Messrs. Warren, Chasan & Leyner, attorneys; Mr. Lewis M. Holland and Mr. Joel A. Leyner, on the brief).
Mr. James P. Beggans argued the cause for defendant-appellant and cross-respondent Bayonne Block Co., Inc. (Messrs. Beggans and Keale, attorneys; Mr. Robert T. Tarleton, on the brief).
Mr. Edward M. Gurry argued the cause for defendant-respondent Ballinger (Messrs. Marley, Winkelried & Hillis, attorneys; Mr. Gurry, of Messrs. Gurry and Conlan, on the brief).
*390 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
On December 3, 1956 plaintiff Michael Andryishyn, while crossing 21st Street in Bayonne, was struck by a truck being driven by defendant Ballinger. He brought an action in the County Court to recover damages for personal injuries, naming as defendants not only Ballinger, but also his wife, owner of the truck, and Bayonne Block Co., Inc., alleged to be Ballinger's employer. The wife was let out of the case, and the jury returned a verdict of $23,000 against Ballinger and the company.
Thereafter the company moved for judgment notwithstanding the verdict, and for a new trial. The motion was denied, but the County Court judge found the verdict excessive and ordered that unless plaintiff consented to accept $15,000 the verdict would be set aside as to damages only. Plaintiff consented upon the condition that defendants pay the reduced judgment; otherwise he expressly reserved his objections to the legal and factual correctness and sufficiency of the order. Bayonne Block did not pay, but instead appealed. Plaintiff cross-appeals from the reduction of the verdict.
Plaintiff died intestate pending the appeal and, on motion, his general administratrix has been substituted in his place.
The basis of the main appeal is that the trial court erred in denying Bayonne Block's motion for involuntary dismissal, made at the close of plaintiff's case and renewed at the conclusion of the entire case, on the ground that plaintiff had failed to establish the relationship of master and servant between the company and Ballinger. The question is, simply, whether the proofs warranted submission of the issue to the jury. The company claims that the only inference deducible from the evidence is that Ballinger was an independent contractor, and that submission of the issue of the existence of a master-servant relationship was unwarranted. Our review of the record convinces us that the question was properly submitted to the jury and that its verdict, obviously based upon its conclusion that Ballinger *391 was an employee of the company, finds reasonable support in the proofs.
Generally speaking, whether a person who performs services for another is a servant or an independent contractor depends upon the control which the employer exercises or retains the right to exercise over the manner in which the worker performs his services. 1 Restatement, Agency 2d, § 220(1), p. 485, and comment, pp. 486-489 (1958); Galler v. Slurzberg, 22 N.J. Super. 477, 487 (App. Div. 1952); Ibid., 31 N.J. Super. 314, 324 (App. Div. 1954), affirmed per curiam, 18 N.J. 466 (1955); 2 C.J.S. Agency § 2(d), pp. 1027-1028 (1936) and 56 C.J.S. Master and Servant § 2(d), pp. 32-37 (1948). The relationship of master and servant is not capable of exact definition. 1 Restatement, Agency 2d, § 220(2), pp. 485-486, lists various factors that may be considered in determining whether one who acts for another is a servant or an independent contractor. Control is only one of them, albeit usually considered the principal one. It has been said that when the manner of performing the service is beyond another's control because of its nature, absence of direct control over such details may become insignificant in the overall view of the facts and the circumstances to be taken into account in determining the relationship. DeMonaco v. Renton, 18 N.J. 352, 357 (1955) (newsboy), quoting from Hearst Publications v. United States, 70 F. Supp. 666 (D.C. Cal. 1946), affirmed 168 F.2d 751 (9 Cir. 1947); Hannigan v. Goldfarb, 53 N.J. Super. 190, 196 (App. Div. 1958) (taxicab driver). Whether Ballinger was, in fact, an employee of Bayonne Block Co. must be determined in the light of the totality of the facts surrounding the relationship.
The company points to the following facts, among others, to establish that Ballinger was an independent contractor: the only hauling he did was to carry bags of cement from the railroad siding in Bayonne to the company's warehouse, for which he received 6¢ a bag; he selected the route; *392 he decided how the bags were to be loaded, and unloaded the truck alone; he received no instructions whatever; he hauled only when a railroad car of cement arrived at the railroad siding; he performed no other services for the company; he was paid by check, without deduction for social security, unemployment or withholding taxes; and he paid for all gasoline, oil and the maintenance of his truck.
Plaintiff, on the other hand, directs attention to other factors brought out in the testimony which indicate that he was an employee of the company. Among them we note that he had been hauling cement for Bayonne Block since 1952, four years prior to the accident; he worked for no one else; one of the company employees had originally shown him how to perform his task; the work he performed was a regular part of Bayonne Block's business; he considered Churchio, the company president, his supervisor; when the truck was not in use he kept it in the company yard; he had no special skill, and the work he did required none; he relied on the company to keep a record of what was due him and to pay him every week, along with its other employees; he continued with the company after the accident and through the time of trial, more than two years later. Many of these are factors which, according to § 220(2) of the Restatement, op. cit., pp. 485-486, should be considered in determining the existence of a master-servant relationship. And see the comments to subsection 2, pp. 489-492.
Bayonne Block relies strongly on Giroud v. Stryker Transportation Co., 104 N.J.L. 424 (E. & A. 1927), described as presenting "far more compelling circumstances than are presented herein." There is at least one significant distinguishing feature between that case and this. In Giroud the driver had been hired by defendant to haul gravel on one particular job only. In the present case Ballinger had been hauling cement for defendant company for some four years. See 1 Restatement, Agency 2d, § 220(2)(f), and comment (j), pp. 485, 490. Other cases cited by this defendant, *393 among them Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261 (1953); Courtinard v. Gray Burial, etc., Co., 98 N.J.L. 493 (E. & A. 1923); Lacombe v. Cudahy Packing Co., 103 N.J.L. 651 (E. & A. 1927); Johnson v. American Oil Co., 110 N.J.L. 456 (E. & A. 1933), are readily distinguishable.
Plaintiff does not argue that Ballinger was a servant of Bayonne Block as a matter of law, but merely that the proofs presented a jury question on that issue. We agree. See 1 Restatement, Agency, § 220, comment on subsection 1, par. c, p. 486 (1958); Roberts v. Geo. M. Brewster & Son, Inc., 13 N.J. Super. 462, 466 (App. Div. 1951). In passing upon the company's motions at the close of plaintiff's case and of the entire case, the trial court was governed by the familiar rule that it was required to accept as true all evidence which supported plaintiff's view, and he was entitled to the benefit of all inferences and deductions which might logically and legitimately be drawn therefrom. Further, that where reasonable, fair-minded men might differ as to the conclusions to be drawn from the proofs, the question in issue was one for the jury's determination. Accordingly, the question of whether a master-servant relationship existed was properly submitted to the jury.
As for the question of the reduction in damages raised by plaintiff's cross-appeal, we are persuaded that the verdict should be reinstated. Generally, the measure of damages in personal injury cases is not gauged by any established graduated scale; within reasonable limits the appraisal of the amount of damages is left to the sound discretion of the jury, and the value of the award must be appraised in the light of existing economic conditions. Cermak v. Hertz Corp., 53 N.J. Super. 455, 465 (App. Div. 1958), affirmed per curiam 28 N.J. 568 (1959). As we said in Cabakov v. Thatcher, 37 N.J. Super. 249, 257, 258 (App. Div. 1955), the trial court "will interfere with the verdict on the mere ground of excessive damages only with *394 reluctance and never except in a clear case. * * * Neither the trial court nor an appellate court may invade the constitutional function of the jury and substitute its judgment for that of the jury as to the amount of damages to which plaintiff may be entitled in an action to recover for a personal tort unless the verdict be so excessive in amount as inevitably to give rise to the inference of mistake, passion, prejudice or partiality, and by that standard to be palpably against the weight of the evidence." And see R.R. 4:61-1(a).
Following the accident on December 3, 1956 plaintiff was hospitalized 1 1/2 months. During the first month he could not move and he had to lie on his right side. He was treated by two orthopedic surgeons, admittedly outstanding in their profession: Dr. Boyle, from December 3 to 31, and Dr. Frank from that date to the date of discharge. Plaintiff had suffered a fracture of the left thigh bone and left pubic bone. The doctors testified that he would be permanently disabled; Dr. Frank described the disability as a shortening of the leg resulting from the hip fracture, and testified that such a fracture usually produced some irritation of the muscles which can cause pain and stiffness. Both experts said that in normal circumstances the use of crutches for a period of some six months could be expected, and Dr. Frank added that in cases like this it was his practice to keep the patient on a cane indefinitely. The two expressed some surprise that plaintiff still had to use crutches, more than two years after the accident. However, they noted that he was suffering from another serious condition (not described at the trial, apparently by agreement of counsel), which the accident did not aggravate but which would prolong his convalescence and his use of crutches.
Plaintiff was 69 years old at the time of the accident, with an admitted life expectancy of 10.58 years. He was a shoemaker operating his own business, earning $30 to $35 a week. He testified he had experienced continuing pain in his leg and hip, and had difficulty sleeping. He had been *395 obliged to give up his shop and sell the equipment because he could not operate the shoe machinery without the use of his leg. His hospital bills had totalled $624.50, and doctors' bills $250.
The question of whether the damages awarded by the jury were excessive is, of course, related to the reasonable amount to be allowed plaintiff for his out-of-pocket expenses, pain and suffering, lost income amounting to over $3,400 at the time of trial, and probable future loss of earnings.
In our view, the evidence clearly justified a substantial verdict. The trial judge abused his discretion in invading the constitutional right of trial by jury. Plaintiff's claim was not grossly exaggerated. His two medical experts testified frankly as to his condition; defendants offered no proof of a contradictory import. Neither produced medical testimony, and this despite the fact that Bayonne Block had had its doctors examine plaintiff. (The court properly charged the jury that it might infer from this that the doctor's testimony would have been unfavorable to its case.) Their cross-examination of plaintiff was perfunctory.
The $23,000 verdict was not disproportionate to the special damages suffered up to the time of trial, totalling almost $4,300. Considered in another light, the jury, because of plaintiff's then life expectancy of 10.58 years, could have found a loss in earnings of over $15,000. This amount would not, of course, take into account pain and suffering.
The trial judge gave only one reason for reducing the verdict: in his opinion it was "excessive." However, as we observed in Cabakov v. Thatcher, above, and as has repeatedly been said by our courts, the mere fact that the award may appear somewhat excessive to the court does not conclusively indicate that it was the result of mistake, prejudice, partiality or passion.
We conclude that the reduction in the verdict must be set aside. The original judgment for $23,000 in favor of plaintiff against defendants, is hereby reinstated and affirmed.