82 N.J. Super. 353 (1964)
197 A.2d 690
BEATRICE MOICH AND DANIEL MOICH, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
PASSAIC TERMINAL & TRANSPORTATION CO., INC., AND JOHN L. SUMMERS, DEFENDANTS-RESPONDENTS, AND
CHARLES W. HARTEL AND ANNA J. HARTEL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1963.
Decided January 24, 1964.
*357 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Lawrence Weintraub argued the cause for the appellants (Mr. Alan R. Moskin, attorney; Mr. Sidney Dincin, on the brief).
Mr. Michael J. Monaghan argued the cause for plaintiffs-respondents (Messrs. Monaghan & Monaghan, attorneys).
Mr. Roger W. Breslin argued the cause for defendants-respondents (Messrs. Breslin & Breslin, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendants, Charles W. Hartel and Anna J. Hartel, appeal from a Law Division judgment following a jury verdict awarding damages to plaintiff Beatrice Moich of $17,000 and to her husband Daniel Moich, suing per quod, of $3,000, and a finding of no cause for action in favor of the codefendants Passaic Terminal & Transportation Co., Inc. and John L. Summers. They also appeal from an order denying their motion for a new trial.
On August 5, 1959 at approximately 11:45 A.M. plaintiff Beatrice Moich was injured when the automobile in which she was a passenger, owned by defendant Charles Hartel and operated by his wife, defendant Anna Hartel, collided with a pole on the northwest corner of the intersection of Naugle and Williams Streets in Closter, New Jersey. Mrs. Hartel, with Mrs. Moich and two children, had stopped on Naugle Street in the vicinity of the Lutheran church, which is located at the southeasterly corner of the intersection formed by Naugle Street and Closter Dock Road, to pick up Mrs. Hartel's young son who was attending Bible School. Neither Mrs. Hartel nor Mrs. Moich could recall whether the car was parked on the north or south side of Naugle Street, but it is undenied that, when parked, it was half a block east of the intersection.
Naugle Street runs in a general easterly and westerly direction. A short distance west of the church, it is intersected on *358 the south side by Closter Dock Road, which enters Naugle Street diagonally from the southeast and joins with Naugle Street which then becomes known as Old Closter Dock Road as one proceeds west of the intersection. Across from the entrance of Closter Dock Road, on the north side of Naugle Street, an unimproved road known as Williams Street intersects Naugle Street at a right angle and runs in a northerly direction.
There is a full-stop sign located on Closter Dock Road a short distance before it intersects with Naugle, and there is a white line across the road with the word "Stop" painted in letters six feet in length. A telephone pole is located two or three feet off the curb at the northwesterly corner of Naugle and Williams Streets. Both Closter Dock Road and Naugle Street are approximately 30 feet in width.
After Mrs. Hartel's son came out of school and entered the car, Mrs. Hartel started up and proceeded westerly on Naugle Street toward the intersection. She testified that as she entered the intersection she observed a truck, owned by the defendant Passaic Terminal & Transportation Co., Inc., and operated by the defendant John L. Summers, coming toward the intersection on Closter Dock Road at her left. She said the truck was then at, or near, the stop sign on Closter Dock Road and its speed was about 25 miles per hour. Mrs. Hartel stated she believed the truck would stop at the stop sign and so she proceeded to cross the intersection at a speed of 15 to 20 miles per hour. She testified that she suddenly realized that the truck was not going to stop and that her car was directly in its path; that she swerved her car to the right and mounted the curb at the northwesterly corner of Naugle and Williams Streets, colliding with the telephone pole. Mrs. Hartel admitted that she was operating the car at a speed of 15 to 20 miles per hour and did not apply her brakes before the collision with the pole.
The truck came to a stop at the center line of Naugle Street and there was no contact between the truck and the Hartel car.
*359 Plaintiff Beatrice Moich testified that she first observed the truck approaching on Closter Dock Road when the Hartel car was coming into the intersection. She said that the truck went past the stop sign and continued into the intersection without stopping. She stated that Mrs. Hartel was looking out of the window toward the truck saying, "I don't think he is going to stop," or, "It is coming too fast," when she saw the pole "coming up" and the impact with the pole occurred.
Mrs. Moich testified that the Hartel car entered the intersection on the right-hand side of Naugle Street; that it traveled in a straight line through the intersection and she did not remember the car swerving to the right. She admitted that in her pretrial deposition she had testified that Mrs. Hartel had turned to the right. When questioned further, she stated she didn't remember which version was correct.
Defendant John Summers, the truck driver employed by the codefendant Passaic Terminal & Transportation Co., Inc., testified that he was driving behind a car as he was proceeding northwesterly on Closter Dock Road toward the intersection of Naugle Street. He said he knew there was a stop sign at the corner and when he applied the brake pedal, his brakes failed. He stated he seized the hand brake and passed the car ahead; then passed the stop sign. He kept applying the hand brake and brought the truck to a stop. He said the front of his truck stopped at the center line of Naugle Street and the rear still extended back into Closter Dock Road.
Summers further testified that he first observed the Hartel car when it started up in front of the church where it was parked at the southerly curb; that it proceeded into the intersection on an angle toward the northerly curb. He said that when the Hartel car passed directly in front of him, or somewhat past him, and he was about to enter the intersection at the point where the word "Stop" was painted on the roadway, he observed Mrs. Hartel looking at him and that she was "talking." He testified that the Hartel car was then at about the center of Naugle Street and "kind of went off like that at *360 an angle." He said he did not observe the Hartel car swerve; it proceeded in practically a straight line.
Plaintiff Beatrice Moich, then two and one-half months pregnant, sustained injuries during the collision, when her right shoulder struck the dashboard and her head and neck went through the windshield. She was admitted to the Pascack Valley Hospital for threatened abortion and separation of the right shoulder and remained there for five days. When released she was required to keep her arm in a sling for three months and could do no housework. She eventually gave birth to a normal child.
Thereafter Mrs. Moich was required to undergo surgery for relief of the shoulder injury, known as a Bennett arthroplasty. This operation consisted of the removal of the outer one inch of the shoulder blade by chisel, and it left a four inch scar. There was evidence that she suffers from some permanent loss of mobility and strength in her arm and shoulder. She was awarded a verdict of $17,000.
Mr. Moich was required to pay $925 for medical expenses and his wife was unable to do house work or to care for their child for a substantial period after the accident. The jury awarded him a verdict of $3,000.

I.
Defendants allege the trial court erred in dismissing their motion for a new trial on the ground it lacked jurisdiction.
The verdict of the jury was rendered on September 19, 1962. Six days later, on September 25, defendants having determined to apply to the trial court for a new trial, their counsel set in motion the procedure of serving plaintiffs and codefendants with notice that such application would be made.
Under R.R. 4:5-2 service of the notice of motion could have been effected by mailing the same to attorneys for the other parties by registered or certified mail. The rule provides that when service is made by mail, it is complete upon mailing. *361 However, defendants proceeded to attempt service by delivery of a copy of the notice of motion to such attorneys. Accordingly, defendants' counsel delivered to a representative of New Jersey Lawyers Service copies of the notice with instructions to serve the same upon the other attorneys. Counsel for the codefendants were served on that day.
Attempts by such agent to serve attorneys for the plaintiffs were unsuccessful on four consecutive days since no one was at their office. When Hartel's attorney learned on October 2 that service had not been effected, he attempted service himself and was able to serve plaintiffs' attorneys on October 4. The latter refused to acknowledge timely service since it had not been made until 15 days after the entry of the verdict.
Defendants' motion for a new trial was denied on the ground that the trial court lacked jurisdiction because defendants had failed to serve the notice of motion within the 10-day period following the entry of the verdict pursuant to R.R. 4:61-2. We agree with the court's disposition of the motion.
Under the clear language of R.R. 1:27B(c) the court is without power to enlarge the period for taking any action under R.R. 4:61-2. Notwithstanding the existence of extenuating circumstances, it consistently has been held that the trial court is without discretion to extend the time given by the rule. Mastranduono v. Resnick, 28 N.J. Super. 142 (Law Div. 1953); Gussin v. Grossman, 66 N.J. Super. 107 (Law Div. 1961).
Defendants' assertion that the only cases interpreting R.R. 4:61-2 in the light of R.R. 1:27B(c) are at the trial level and hence not binding on this court, is only technically correct. While such an interpretation was not the subject of the court's holding, the statement of our Supreme Court in Hodgson v. Applegate, 31 N.J. 29 (1959), cannot be ignored. The court said:
"The rules contain clear and definite time limitations for motions before the trial court, i.e., * * * 10 days after * * * the entry of the verdict of the jury under R.R. 4:61-2, * * *. These *362 time limitations may not be enlarged. R.R. 1:27B(c)." (at pages 36-37; emphasis added).
It is significant to note that the federal counterpart of R.R. 4:61-2, Fed. R. Civ. Proc. 59(b), has been similarly construed. In 6 Moore's Federal Practice § 59.09[3], pp. 3851-2, it is stated,
"If the motion [for a new trial] is not timely, the trial court may not exercise discretion but is obligated to deny the motion for lack of power to grant new trial relief."
And see Nugent v. Yellow Cab Company, 295 F.2d 794 (7 Cir. 1961).
Defendants urge that R.R. 1:27A gave the trial court power to relax the strict mandate of R.R. 1:27B(c) which bars both the court and the parties from enlarging the 10-day period referred to in R.R. 4:61-2. We do not agree. While R.R. 1:27A provides that court rules may be relaxed or dispensed with in any instance where it is manifest that strict adherence to them will work surprise or injustice, the Supreme Court specifically barred such right for the specific rules referred to in R.R. 1:27B(c).
Defendants further contend that since R.R. 1:27B (c) contains no specific prohibition barring the trial court from entering an order directing that the notice of motion be filed nunc pro tunc as within the 10-day time limitation, the trial court could have done so. Again we do not agree. Such a procedure would fly in the face of the intention of the Supreme Court in barring the enlargement of the 10-day period and nullify the plain language of R.R. 1:27B(c). There was no error in the trial court's denial of the defendants' motion.

II.
Defendants contend that this court may entertain the question of whether the verdicts rendered are against the weight of the evidence, even though the trial court may have been without jurisdiction to hear the motion. It is argued that *363 R.R. 1:5-3(a) may be relaxed under R.R. 1:27A. R.R. 1:5-3(a) provides:
"On a review of any cause involving issues of fact determined by the verdict of a jury, the contention that the verdict was contrary to the weight of the evidence shall not be advanced or entertained unless application for new trial on that ground was first made to the trial court in accordance with the rules and denied."
Our appellate courts have consistently held that where a motion for a new trial was not made in accordance with the rules, the issue of the weight of evidence will not be entertained on appeal. Priest v. Poleshuck, 15 N.J. 557, 565 (1954); Stanley Co. of America v. Hercules Powder Co., 29 N.J. Super. 545, 553 (App. Div. 1954), reversed on other grounds 16 N.J. 295 (1954); New Jersey Highway Authority v. Rudd, 36 N.J. Super. 1, 6 (App. Div. 1955).
While R.R. 1:27A applies to all court rules, save those expressly excluded by R.R. 1:27B(c), it should be noted that our courts have never clearly recognized its applicability to R.R. 1:5-3(a).
In Amado v. Malibu Dude Ranch, 26 N.J. Super. 445 (App. Div. 1953), the court assumed but did not decide that R.R. 1:5-3(a) could be relaxed. It then held that relaxation was not warranted under the circumstances.
When Priest v. Poleshuck, supra, was before the Appellate Division, the court stated that R.R. 1:2-20, the forerunner of R.R. 1:5-3, could be relaxed but did not do so since the defendant had not sought such relief. See 29 N.J. Super. 401, 407 (App. Div. 1954). However, when the case reached the Supreme Court (15 N.J. 557), the court made the following statement:
"We have no occasion to consider whether the verdict was contrary to the weight of the evidence, for there was no application to the trial judge for a new trial on that ground as required by Rule 1:2-20, as then amended, now R.R. 1:5-3." (at page 565)
It is significant that the Supreme Court referred to defendant's failure to move for a new trial before the trial judge, rather than his omission to seek relaxation of the rule.
*364 In Stanley Co. of America v. Hercules Powder Co., supra, 29 N.J. Super. 545 (App. Div. 1954), Judge (now Justice) Francis made the following statement:
"As the matter is presented in the brief, it savors more of an attack upon the weight of the evidence. But no motion to set aside the verdict as contrary to the weight of the evidence was presented to the trial court. And no such ground is or could be presented at this time. R.R. 1:5-3." (at page 553; emphasis added)
In Amado, supra, the court pointed out that when no motion for a new trial is made to the trial court, the appellate court is deprived of a substantial element required to be considered in its deliberations. This element consists of the opportunity of the trial court to judge the credibility of the witnesses and the expression of his views on the subject. The court also stated:
"Furthermore, under the long established law the setting aside of a jury verdict on the ground suggested is a problem calling for the exercise of the discretion of the trial court. Once exercised it is not disturbed on appeal unless, after giving heed to the limitations imposed by Rule 1:2-20(a) [now R.R. 1:5-3(a)], it clearly appears to have been arbitrary. On appeal in such a situation the grievance complained of is the error of the trial court in refusing to set aside the verdict. Manifestly this error cannot be charged where the action was not taken." (at page 449)
Assuming that this court has the power to relax the strict injunction of R.R. 1:5-3(a), the exercise of such power is neither automatic nor perfunctory. Substantial and persuasive ground therefor would have to be advanced. We are being asked to engage in a review of the evidence which was prohibited to the trial court because of defendant's failure to comply with the rules. Undoubtedly such a request should not be looked upon with favor, since it would result in the circumvention of R.R. 4:61-2.
Under the circumstances of this case, and assuming that we have the power to relax the provisions of R.R. 1:5-3(a), we find no basis for relaxation in the present case.

*365 III.
Defendants contend that the verdicts awarding damages of $17,000 to Beatrice Moich and $3,000 to Daniel Moich were excessive. They also allege that the verdict of no cause for action in favor of the codefendants was contrary to the weight of the evidence.
We have held that we should not relax the strict injunction of R.R. 1:5-3(a) which bars from our consideration such contentions. Nevertheless, we are satisfied from our examination of the record that such verdicts should be sustained.
The measure of damages in personal injury cases is not gauged by any established graduated scale, and within reasonable limits is left to the sound discretion of the jury. Andryishyn v. Ballinger, 61 N.J. Super. 386, 393 (App. Div. 1960). An appellate court may not substitute its judgment for that of a jury as to the amount of damages to which a plaintiff may be entitled in an action to recover for a personal tort unless the verdict is so excessive in amount as to give rise to the inference of mistake, passion, prejudice or partiality, and by that standard is palpably against the weight of the evidence. Cabakov v. Thatcher, 37 N.J. Super. 249, 258 (App. Div. 1955). The testimony pertaining to the injuries and resulting damages sustained by the plaintiffs gives rise to no such conclusion in the instant case. We do not find the damages awarded to be excessive.
Nor do we find that the verdict of no cause for action entered in favor of the codefendants was against the weight of the evidence. Mindful of the controlling authority, it does not appear that such verdict was clearly and convincingly the result of mistake, partiality, prejudice or passion.
The jury could reasonably have found that codefendant Summers was faced with an emergent situation and exercised due care under the circumstances. Moreover, the jury could have found that the proximate cause of the accident was not the fact that Summers passed the stop sign, but rather was due to Mrs. Hartel's inattentiveness. There was testimony *366 that she had illegally parked on the left side of Naugle Street and that upon starting up her car she proceeded diagonally into the intersection; that in turning to admonish Summers, who had passed the stop sign but who came no closer than eight feet from the Hartel vehicle, she maintained her diagonal course and, without swerving or veering, and without applying her brakes, collided with the pole.

IV.
Defendants argue that the court erred in permitting the defendant Summers to testify as to his intention to contest a traffic ticket issued for his alleged failure to stop at the stop sign in violation of N.J.S.A. 39:4-144.
The municipal court records show that on August 27, 1959, the return day of the summons, a plea of guilty was entered, a fine of $5 imposed, and a receipt for payment of the fine and costs was issued. The court clerk admitted she had no recollection of the case and could not testify that the person who entered the plea and paid the fine was the defendant Summers.
Summers testified that he had turned the summons over to his employer and informed him he had to appear in court on the return date. He admitted that he had signed the reverse side of the ticket.
Over objection of plaintiffs and defendants Hartel, the court permitted Summers to testify that he went to court on the return day intending to contest the charge. He was informed that the fine had been paid (presumably by his employer). He denies he entered a plea of guilty or that such a plea was entered with his knowledge or consent. He said he wanted to contest the charge because three traffic points would be assessed against him under the Motor Vehicle regulations if adjudged guilty.
Defendants contend that the plea of guilty was a judicial admission of guilt of the offense charged, viz., failure to stop at the stop sign  which prohibits any further dispute of *367 the fact. 4 Wigmore on Evidence (3d ed. 1940) § 1064, pp. 45-46; 9 ibid., § 2590, p. 587. Without in any way questioning the conclusiveness of a judicial admission, the issue in the instant case was whether the admission had in fact been made by Summers. He was properly allowed to deny that he had pleaded guilty and to testify that he went to court to contest the charge. It was for the jury to resolve the disputed issue and the trial court correctly submitted the matter to the jury in its charge.

V.
Defendants contend that the trial court erred by refusing to strike the testimony of Dr. Frederick D. Dilger, one of plaintiffs' medical witnesses, on the ground that his diagnosis was based on hearsay evidence.
The record indicates that Dr. Dilger, an orthopedic surgeon, examined Mrs. Moich on April 26, 1960 and January 26, 1962. On the first occasion he made a physical examination which revealed a separation of the acromioclavicular joint with degenerative changes of the joints. He recommended that she have an operation to remove part of the bone on the outer end of the right clavicle. The operation, known as a Bennett arthroplasty, was performed by Dr. Albert Willner, another orthopedic surgeon, on October 20, 1960. On the second examination in 1962, Dr. Dilger again made a physical examination and found Mrs. Moich still suffered pain and that there was a permanent disability of the shoulder.
During cross-examination Dr. Dilger testified that on his first examination he had a report of the results of X-rays (taken apparently at the Pascack Valley Hospital and also by a technician of the New Milford Physicians Group), but he could not recall who gave him the report. Counsel for all defendants moved to strike the entire testimony of the witness since his diagnosis of Mrs. Moich's injuries was based on hearsay testimony. However, when further questioned the doctor testified that he based his diagnosis on his own physical examination, which was confirmed by the X-ray report.
*368 The record clearly shows that the doctor made physical examinations of Mrs. Moich on each occasion. Testimony of such examinations and findings was not hearsay and a motion to strike his entire testimony was too broad. Beam v. Kent, 3 N.J. 210 (1949). Furthermore in State v. Alexander, 7 N.J. 585 (1951), cert. denied 343 U.S. 908, 72 S.Ct. 638, 92 L.Ed. 1326 (1952), our Supreme Court held that since a medical examiner testified that he had used hearsay evidence (laboratory report) to confirm an opinion already arrived at, there was no error.
A fair reading of the testimony indicates to us that the doctor's diagnosis rested primarily on his own personal examination of Mrs. Moich. We find no prejudicial error in the ruling of the trial court.

VI.
Finally, defendants Hartel assert that the trial court erred in charging the jury that they could consider an alleged violation by Mrs. Hartel of N.J.S.A. 39:4-135 in determining the question of negligence. The court charged the jury as follows:
"I will read also from Title 39:4-135.
`The operator of a vehicle shall not stop, stand or park the vehicle in a roadway other than parallel with the edge of the roadway headed in the direction of traffic, on the right-hand side of the road and with the curb side of the vehicle within six inches of the edge of the roadway * * *.'
Those, as I say, are portions of the statute governing the operation of automobiles on our highways.
Now, under our law the mere violation of a statute governing the operation of motor vehicles does not of itself necessarily constitute negligence. It may be considered by you under the particular circumstances in determining whether there was negligence. The violation of a provision of the Traffic Act, if you find that it did as a matter of fact occur, may be some evidence of negligence. It is a circumstance which you may take into consideration with all the other facts and circumstances in the case in reaching your conclusion on the subject of proximate cause and negligence."
Defendants Hartel objected to the charge, contending that the statute was not relevant to the issues before the jury. *369 They now claim that the testimony from all witnesses, which was not controverted, established that the Hartel vehicle entered the intersection on the right-hand side of Naugle Street. They say that the jury's consideration of the statute served no purpose other than to confuse them. And lastly, they say the allegation that the Hartel car was parked on the left-hand side of Naugle Street, and facts showing it was causally related to the accident, were not set forth in the pretrial order. We do not agree.
Mrs. Hartel testified that as she entered the intersection she was operating her car on the right side of Naugle Street. Her testimony was contradicted by the defendant Summers. He said Mrs. Hartel had been parked on the left-hand side of Naugle Street; that when she started toward the intersection she followed a course from the southerly curb of Naugle toward the northerly curb and entered the intersection at the center of Naugle Street. Neither Mrs. Hartel nor Mrs. Moich could recall on what side of the street the Hartel car had been parked.
The violation of a penal statute is not negligence per se, but is a mere incidence of negligence. Rizzolo v. Public Service Co-ordinated Transport, 111 N.J.L. 107, 111 (E. & A. 1933); Henry v. Ehrlich Transfer & Trucking Co., Inc., 119 N.J.L. 493, 496 (E. & A. 1938), affirmed 121 N.J.L. 541 (E. & A. 1939). Causation must appear in any case to connect the violation of the statute and the accident, Kuczko v. Prudential Oil Corp., 110 N.J.L. 111, 115 (E. & A. 1933), and the question of a causal connection is usually for the jury. Renner v. Martin, 116 N.J.L. 240, 241 (E. & A. 1936). In general, upon common law principles the plaintiff in a negligence action obtains the benefit of the statute if he is one of the class for whose benefit it was enacted, and if the breach of that statute was the efficient cause of his injury. Reeves v. Prosser, 109 N.J.L. 485, 489 (E. & A. 1932); Evers v. Davis, 86 N.J.L. 196, 204 (E. & A. 1914).
*370 With regard to a charge, "The acid test is, would the jury be misled?" Middleton v. Public Service Co-ordinated Transport, 131 N.J.L. 322, 323 (E. & A. 1944). The charge must be construed as a whole. Lenz v. Public Service Railway Co., 98 N.J.L. 849, 852 (E. & A. 1923); 10C Blashfield, Cyclopedia of Automobile Law and Practice § 6677, at p. 38. But where statutes are inapplicable under the pleadings and evidence, it is error to give instructions referring to or founded upon such statutes, 10B Blashfield, Cyclopedia § 6666, at p. 475, and instructions concerning traffic regulations should not be given when there is nothing in the evidence that makes them pertinent. 10B Blashfield, Cyclopedia § 6666, at p. 473.
The evidence in the case sub judice is in conflict. However, the jury might well conclude from Summers' testimony that Mrs. Hartel violated the statute by parking on the left side of the street; that upon starting up she crossed from left toward the right diagonally and entered the intersection at the center of Naugle Street on an angle. They could find that she did not veer or swerve from such a course and, upon turning her attention towards Summers' truck, continued in a straight line to jump the northwesterly corner and collide with the pole.
Under the circumstances present in this case the jury properly could consider a violation of the statute, if in fact it occurred, in their determination of the issues of proximate cause and negligence on the part of Mrs. Hartel.
Defendants say the allegation that the Hartel car was illegally parked was not alleged in the pretrial order and therefore the trial court erred in charging the jury to consider matters outside of its scope. We find no merit in this contention. The pretrial order specifically charges negligence in the operation of the Hartel vehicle in "failing to keep the vehicle on its proper traffic lane."
We find no error on the part of the trial court. The judgment is affirmed.