RACHEL BALSAM et al., Respondents, v DELMA ENGINEERING CORPORATION, Respondent, and EXXON CORPORATION et al., Appellants, et al., Defendants.

First Department, August 4, 1988

**APPEARANCES OF COUNSEL**

*Marc S. Moller* of counsel *(David C. Cook* with him on the brief; *Kreindler & Kreindler,* attorneys), for respondents.

*George A. Burrell* of counsel *(Robert L. Haig* and *James V. O'Gara* with him on the brief; *Kelley Drye & Warren,* attorneys), for Exxon Corporation, appellant.

*Jeremy Heisler* of counsel *(Kevin B. Pollak* with him on the brief; *Killarney Rein Brody & Fabiani,* attorneys), for 315 West 96th Street Service Center, Inc., appellant.

OPINION OF THE COURT

SULLIVAN, J.

The underlying accident in this personal injury action occurred on January 24, 1986, when an automobile driven by Rachel Balsam, the plaintiff, which was stopped while she waited in line in a traffic lane on West 96th Street, was struck in the rear by a van that had skidded on ice. After exiting her automobile and while standing in the street surveying the damage to her car, she was injured when a third vehicle struck the rear of the van, and caused it to lurch forward and pin her against her own automobile. The ice which covered West 96th Street had allegedly formed after Delma Engineering Corporation, a defendant, discharged water onto the roadway in subfreezing weather during the course of work for the New York City Transit Authority, also a defendant, at a nearby construction site.

Plaintiff and her husband, who sues derivatively, seek damages from the driver of the van and the third vehicle for negligence in the operation of their vehicles. They also sue 315 West 96th Street Service Center, Inc., the operator of the Exxon service station outside which the accident took place and into which plaintiff, at the time, was waiting to enter, and Exxon Corporation, the station's supplier of gasoline and motor oil, as well as the City of New York. The latter is charged with a breach of its duty to maintain West 96th Street at the site of the accident in a reasonably safe condition for travel and passage thereon. Only the liability of Service Center and Exxon is at issue on this appeal.

The service station, which, insofar as is relevant, consists of six contiguous gasoline bays, separated by walls perpendicular to and abutting the north side of 96th Street and its westbound traffic lanes, does not provide a waiting area for vehicles on its premises. Its customers drive into the next available bay directly from the street. An eight-foot-wide sidewalk separates the station's property line from the 96th Street roadway, which is a six-lane, two-way street. The layout of the service station has remained unchanged since 1981 when Service Center, which leases the premises from a third party, not a defendant herein, took over its operation. The premises, however, had previously been used as an Exxon service station for at least 25 years. While Exxon holds title to the gasoline pumps, which it allows Service Center to use, it does not own, lease, occupy, possess or exercise control over the station. Nor

did it design its physical layout, or exercise control over the position or placement of the pumps.

On the morning of the accident, plaintiff drove to the service station to purchase gasoline. Since all the bays were occupied, she stopped her car in the middle of the three westbound lanes of West 96th Street, alongside the parking lane. The front of her car was nearest to the service station's most easterly bay. After she had been waiting for several minutes, the accident occurred, as already described. It is uncontroverted that neither Exxon nor Service Center ever maintained the roadway or cleared it of snow or ice.

In her second amended complaint, which is at issue here, plaintiff alleged that Exxon and Service Center had negligently failed to keep that portion of West 96th Street in and about the vicinity of the entranceway to the service station free of ice. Exxon's answer asserted affirmative defenses including lack of ownership, operation, maintenance and control of the premises. Service Center's answer asserted failure to state a cause of action as an affirmative defense. The answers of the other defendants interposed cross claims against both Exxon and Service Center.

After the taking of depositions, Exxon and Service Center separately moved for summary judgment dismissing the second amended complaint and the cross claims. In its papers Exxon demonstrated that its only relationship to the station was a contract to supply gasoline and motor oil, and for the loan of the gasoline pumps. Service Center argued that, absent a claim that it had caused the icy condition, it was not obligated to clear the street of ice, a duty which is solely that of the municipality. Nor, it argued, does the queue of customers' cars waiting for an available gasoline pump constitute a special use of the street.

Plaintiff opposed the motions and cross-moved for leave to serve a third amended complaint, asserting, for the first time, deficiencies in the design of the service station, as a result of which its customers were encouraged regularly to utilize the street as a waiting area, and a principal-agent relationship between Exxon and Service Center. In support of the cross motion plaintiff submitted an affidavit from an architect who opined, without elaboration or explanation, that had fewer gasoline pumps been installed and the remaining pumps situated further back from and parallel to 96th Street, instead of perpendicular, a waiting area could have been created

within the service station premises, and that this design defect and the mode of operation of the service station was a direct and proximate cause of plaintiff's accident. As to Exxon, plaintiff relied on the visible display of Exxon's trademark on the station and pumps; its status as lessee of the premises between 1963 and 1980* and as the station's gasoline and oil supplier since 1980 under a contract pursuant to which it had the right to determine the specific area designated as safe for ingress and egress for the making of deliveries; and Exxon's status as owner and provider of the pumps, which, pursuant to separate agreement, Service Center took "as is where is".

The motion court denied the motions to dismiss, holding essentially that an abutting property owner who uses the public way for his own convenience and benefit must maintain it in a reasonably safe condition. With respect to Exxon, the court found that it "maintained sufficient incidents of control, by virtue of owning the pumps and tanks, display of its logo etc., to be liable for injury caused by a dangerous condition on the premises. The agreements between Exxon and Service Center indicate that Exxon as owner might have exercised some control over the layout and placement of the gasoline pumps." The court granted plaintiff's cross motion for leave to serve a third amended complaint, ruling that Exxon and Service Center would neither be surprised nor prejudiced by such amendment and that whether the design of the service station contributed to the accident presented an issue of fact. We reverse, grant the motions for summary judgment and dismiss the complaint against both Exxon and Service Center.

Neither the second nor third amended complaint has any merit insofar as Exxon is concerned, and its joinder as a party defendant cannot be justified on any jurisprudential ground. Absent a duty of care to the person injured, a party cannot be held liable in negligence. *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 342, *rearg denied* 249 NY 511.) Liability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of such premises. *(Gilbert Props. v City of New York,* 33 AD2d 175, 178, *affd* 27 NY2d 594; *Kilmer v White,* 254 NY 64, 69; *Mollino v Ogden & Clarkson Corp.,* 243 NY 450.) The existence of one or more of these elements is sufficient to give rise to a duty of care.

---

* It appears that from 1963 to 1980 Exxon leased the premises and sublet it to Atlas Garage, Inc., then owned by the Goldberg family. In 1980, Mark Igel purchased the stock of Atlas from the Goldbergs and acquired the leasehold interest of the premises from Exxon.

Where none is present, a party cannot be held liable for injury caused by the defective or dangerous condition of the property. *(Dick v Sunbright Steam Laundry Corp.,* 307 NY 422, 424.)

Faced with these well-settled principles, plaintiff can muster only one argument against Exxon—its alleged control of Service Center's special use of the street. Even if we accept, arguendo, that a special use of the street existed, none of the factors advanced in support of this argument indicate a type of control by Exxon over Service Center's activities sufficient to give rise to a duty owing to plaintiff.

The display of Exxon's signs and logos at the station is an insufficient basis upon which to impose a duty of care, since such display merely indicates that Exxon's products were sold at the station. *(Price v Cities Serv. Oil Co.,* 71 AD2d 700; *see, Kaplan v Shell Oil Co.,* 59 AD2d 936.)* Equally unpersuasive is plaintiff's assertion of the doctrine of apparent authority without any evidentiary showing indicating in what respect she relied on any representations by Exxon that Service Center was its agent, particularly as it relates to the icy condition in the street or Service Center's alleged use of the street as a waiting area. *(See, Bank v Rebold,* 69 AD2d 481, 493.)

The gasoline sales agreement, upon which plaintiff also relies, is merely a supply contract. Exxon's right to require safe ingress and egress is limited to its own deliveries. Service Center's promise to maintain the premises in a good state of repair and a clean and healthful manner has nothing to do with its practice of allowing, causing or encouraging its customers to queue up on the public street, but, rather, relates to the condition of the service station premises, and, more particularly, with respect to the "clean and healthful" requirement, the bathrooms.

Although Service Center used Exxon's equipment, nothing in their agreement indicates that Exxon had the right to determine or dictate the location of the pumps. Even the power to veto their location by termination of the supply contract would not create a duty on Exxon's part to exercise reasonable care toward plaintiff. Finally, plaintiff's reliance on Exxon's leasehold interest in the premises between 1963 and 1980 is misplaced. Even if, contrary to the record, Exxon had built and designed the service station in its present form, liability therefor would not continue for the more than five-

year period after the premises passed from its control until the time of the accident, but, rather, only for a reasonable time to allow the successor in interest in possession to take corrective action. *(Levine v 465 W. End Ave. Assocs.,* 93 AD2d 735.) The duty to maintain or redesign the premises devolves upon the successor in title in possession. *(Govel v Lio,* 120 AD2d 840.)

■ While the sufficiency of the complaint against Service Center presents a different and more difficult question, we conclude that it is not liable for the conditions on 96th Street which caused plaintiff's injuries. Plaintiff does not dispute that liability can be imposed upon an abutting landowner or lessee for the condition of the adjoining property only where said landowner or lessee has created an unsafe condition *(Congreve v Smith,* 18 NY 79; *see, Roark v Hunting,* 24 NY2d 470, 475) or where he has put a part of the public way to a special use for his own benefit *(see, e.g., D'Ambrosio v City of New York,* 55 NY2d 454). This record is bereft of any evidence, or indeed any claim, that Service Center caused or contributed to the accumulation of ice in the roadway.

The principle of special use, a narrow exception to the general rule, imposes an obligation on the abutting landowner, where he puts part of a public way to a special use for his own benefit and the part used is subject to his control, to maintain the part so used in a reasonably safe condition to avoid injury to others. *(Nickelsburg v City of New York,* 263 App Div 625, 626; *see, Wylie v City of New York,* 286 App Div 720; *Santorelli v City of New York,* 77 AD2d 825.) Special use cases usually involve the installation of some object in the sidewalk or street or some variance in the construction thereof. In *Nickelsburg,* for example, the court found a special use where iron rails had been imbedded in the sidewalk leading from the defendant's property to permit the wheeling of refuse to the curb. *Santorelli* involved an oil filler cap, jutting above the sidewalk, which was used in the delivery of heating oil to the abutting owner's building. In *Wylie,* the sidewalk in front of the abutting owner's premises was cut to form a runway, constructed differently from the rest of the sidewalk, to provide trucks with ingress and egress to a warehouse. The common thread in each of these cases was an installation "exclusively for the accommodation of the owner of the premises which he was 'bound to repair * * * in consideration of private advantage' ". *(Nickelsburg v City of*

*New York, supra,* at 626, citing *Heacock v Sherman,* 14 Wend 58.)

None of the indicia of special use are remotely present in this case. Plaintiff does not allege that Service Center benefited from the 96th Street roadway in a manner different from that of the general populace. She argues that Service Center coopted the street for its own commercial benefit by causing or encouraging customers to wait for an available pump, but fails to cite any cases in which such a common occurrence as a line of waiting cars on the public thoroughfare outside a car wash, parking lot or other facility open to the public has been held to constitute a special use. The conduct of the customers in stopping their vehicles in the street until one of the gasoline bays becomes vacant is a normal use of the street; and, from the service station operator's perspective, varies only in degree from the ordinary commercial enterprise's utilization of the public streets to provide access to its premises for its customers. To construe the amorphous benefit received by such entrepreneurs as a "special benefit" would effectively allow the special use exception to swallow up the rule exempting abutting landowners from liability for injury on the public ways. It would place on every homeowner and commercial establishment a duty to maintain the abutting public roads whenever it could be shown that they, too, reap a special benefit from the use of the public streets.

■ Recognizing the weakness of her case, plaintiff sought leave to amend the complaint a third time to assert the theory of negligent design. As already noted, the motion court granted the application. This was error. Although, generally, absent prejudice or surprise, leave to amend a pleading should be freely given (CPLR 3025 [b]), leave must be denied where the new matter is legally insufficient. *(See, Probst v Einstein Med. Center,* 82 AD2d 739; *cf., Newton v Aqua Flo Co.,* 106 AD2d 919; *see,* 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3025.15, at 30-610.)

The motion court accepted as a rule of law plaintiff's contention that Service Center had a duty to design or reconstruct the station so that customers were afforded a waiting area on the premises, apparently concluding that it had an obligation to prevent accidents between prospective patrons, even those who had not yet entered its premises, and total strangers such as the two drivers involved in this accident. Such a holding, with all its implications, cannot stand. In our view, to impose on Service Center as a standard of reasonable

care the duty to design or maintain its station so as to provide an on-site waiting area would unreasonably stretch the limits of landowner responsibility.

Before a defendant can be held liable in negligence, he must be shown to have breached a duty of care owed to the plaintiff to adhere to a standard of reasonable conduct with respect to the risk involved. The responsibility for delineating that duty in a given set of circumstances is that of the courts. *(Blye v Manhattan & Bronx Surface Tr. Operating Auth.,* 124 AD2d 106, 108-109; *Eiseman v State of New York,* 70 NY2d 175, 189-190.) *Pulka v Edelman* (40 NY2d 781), a case involving the scope of a parking garage operator's duty, albeit in a somewhat different factual setting, is instructive insofar as it recognized commonsense limitations on the imposition of a duty on such an enterprise in connection with regulating the routine daily activities of third-party patrons and others. In rejecting the imposition of a duty on the part of the garage operator to protect pedestrians against the foreseeable consequences of its patrons' negligence in exiting the garage by requiring them to stop before crossing an adjoining sidewalk, the court cited the impracticability and enormity of the burden cast on the operators of such establishments if the scope of their duty were so extended and the limitless liability potential that would flow therefrom. As the case makes clear, the question of imposition of a duty is one of policy and common sense, not technicalities.

In 1986, over 220,000 motor vehicles were registered in Manhattan alone. On an average workday, an additional 900,000 vehicles entered the borough. By contrast, however, Manhattan has only approximately 65 gasoline retail outlets, making for a ratio of 1 gasoline station to every 17,000 cars. In view of the reality of the space limitations and traffic density in Manhattan, it seems fair to say that the duty plaintiff seeks to impose, the creation of an on-premises, off-the-street waiting area for vehicular customers who wish to purchase gasoline, is one that cannot be fulfilled. The limitations on the scope of duty so sensibly delineated in *Pulka* would be seriously eroded if operations such as Service Center's were burdened with the responsibility for redesigning their facilities to diminish the potential of vehicular accidents off their premises.

Other courts have similarly rejected negligent design claims for accidents occurring on the public approaches to gasoline service stations *(see, e.g., Tauraso v Texas Co.,* 275 App Div

856, *affd* 300 NY 567; *see also, Weber v City of New York*, 24 AD2d 618), as well as with respect to other commercial establishments *(see, e.g., Grandy v Bavoro*, 134 AD2d 957).

We, therefore, reject the argument that Service Center had a duty to provide a waiting area on its premises. In light of this determination, we need not reach Service Center's other argument, namely, that the design of the service station was not the proximate cause of plaintiff's injuries.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered December 31, 1987, which denied the motions of defendants Exxon Corporation and 315 West 96th Street Service Center, Inc., doing business as Atlas Garage, for summary judgment dismissing the second amended complaint and the cross claims against them and granted plaintiff's cross motion for leave to serve a third amended complaint, should be reversed, on the law, without costs or disbursements, the motions for summary judgment granted and the cross motion denied.

KUPFERMAN, J. P., SANDLER, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on December 31, 1987, unanimously reversed, on the law, without costs and without disbursements, the motions for summary judgment granted, and the cross motion for leave to serve a third amended complaint denied.