678 A.2d 225

DAVID BAHRLE, IDA BAHRLE, MICHAEL BAHRLE, STEVEN BAHRLE, WILLIAM BAHRLE, PATRICIA M. BAHRLE, STEVEN AND PATRICIA M. BAHRLE AS GUARDIANS AD LITEM FOR KYLE BAHRLE, A MINOR, KAREN BENHAM, MICHAEL BENHAM, MICHAEL BENHAM, AS GUARDIAN AD LITEM FOR CARLEY BENHAM, AND MICHAEL C. BENHAM, MINORS, DONNA BERGMANN, KENNETH BERGMANN, KENNETH BERGMANN, AS GUARDIAN AD LITEM FOR JASON BERGMANN AND MICHAEL BERGMANN, MINORS, ELIZABETH BETZ, LAWRENCE BETZ, JR., CAROLE A. BRILLY, KATHLEEN BRILLY, MARYBETH BRILLY, PATRICK J. BRILLY, CAROLE A. BRILLY, AS GUARDIAN AD LITEM FOR PATRICIA B. BRILLY, A MINOR, RUTH CERVASIO, THOMAS CERVASIO, HILARY DONOHUE, ROBERT M. DONOHUE, ROBERT M. DONOHUE, AS GUARDIAN AD LITEM FOR DAWN DONOHUE, MERRILEE DONOHUE AND TIFFANY DONOHUE, MINORS, DOROTHY FORTUS, JOHN S. FORTUS, PATRICIA D. FORTUS, STEPHEN J. FORTUS, DEBRA A. FRIERMUTH, NEIL ALAN FRIERMUTH, SHERRY A. FRICK, THOMAS D. FRICK, THOMAS AND SHERRY FRICK, AS GUARDIANS AD LITEM FOR ATRINA FRICK, A MINOR, DAVID GALLINA, ELLEN GALLINA, ELLEN GALLINA, AS GUARDIAN AD LITEM FOR KAREN GALLINA, AND KRISTINE GALLINA, MINORS, ANDREW GLATZ, BERTHA GLATZ, FREDERICK A. GLATZ, PAUL T. GLATZ, CHERYL D. HEDBERG, JOHN A. HEDBERG, CHERYL D. HEDBERG, AS GUARDIAN AD LITEM FOR DERRICK HEDBERG, JOHN HEDBERG, AND MICHELE HEDBERG, MINORS, NORA HENNESSEY, MARIE HOWLEY, ELLEN KLEIN, JOSEPH S. KLEIN, PATRICIA ANN KLEIN, JOSEPH S. KLEIN, AS GUARDIAN AD LITEM FOR THERESA KLEIN, A MINOR, DALE R. KNOTT, DENISE L. KNOTT, IRENE G. KNOTT, GEORGE T. LEARY, III, JUDITH A. LEARY, JUDITH A.

LEARY, AS GUARDIAN AD LITEM FOR SEAN A. SCANLON AND TARA B. SCANLON, MINORS, JEAN LUZETSKY, JOHN J. LUZETSKY, ROBERT J. LUZETSKY, JOHN AND JEAN LUZETSKY, AS GUARDIANS AD LITEM FOR JANENE LUZETSKY, A MINOR, WILLIAM J. MAGYARITS, ELAINE MANGAN, GRACE MANGAN, JUDITH MANGAN, MICHAEL G. MANGAN, SR., PETER MANGAN, WILLIAM MANGAN, WILLIAM MANGAN, AS GUARDIAN AD LITEM FOR CHRISTOPHER MANGAN, NOAH MANGAN, PATRICK MANGAN AND WILLIAM MANGAN, JR., MINORS, ELAINE MANGAN, AS GUARDIAN AD LITEM FOR MICHAEL MANGAN, JR. AND TARYN MANGAN, MINORS, ELLEN MARANO, SALVATORE MARANO, DENNIS MCCORY, DIANE B. MCCORY, ELEANOR MCCORY, DENNIS MCCORY, AS GUARDIAN AD LITEM FOR KATHLEEN MCCORY, A MINOR, CAROL ANN MCMAHON, PATRICK L. MCMAHON, DORIS MEEHAN, JAMES J. MEEHAN, JOHN V. MEEHAN, MILDRED J. MEEHAN, VINCENT T. MEEHAN, JOHN V. AND MILDRED J. MEEHAN, AS GUARDIANS AD LITEM FOR JOHN J. MEEHAN, A MINOR, MICHAEL A. METELSKY, ANITA J. O'BRIEN, THOMAS E. O'BRIEN, CHARLES OBRZUT, STELLA OBRZUT, LUCILLE PETERS, ESTATE OF HELMUTH PETERS, HAZEL F. PETERSON, ROBERT PETERSON, ROBERT PETERSON, AS GUARDIAN AD LITEM FOR CHRISTINE PETERSON, A MINOR, CATHLEEN PETRIN, NICHOLAS PETRIN, STEFFANY PETRIN, TIMOTHY PETRIN, JOSEPH PINO, LINDA PINO, LINDA PINO, AS GUARDIAN AD LITEM FOR ANGELA CAPUTO AND JOSEPH CAPUTO, MINORS, JOAN PONTICELLO, MATTHEW PONTICELLO, JOAN PONTICELLO, AS GUARDIAN AD LITEM FOR RENE PONTICELLO AND TINA PONTICELLO, MINORS, CATHRYN POPP, ANGELA RIZZO, ANTHONY RIZZO, CHRISTINE RIZZO, GENE J. SANTUCCI, JUDITH ANN SANTUCCI, JUDITH ANN SANTUCCI, AS GUARDIAN AD LITEM FOR DIANE SANTUCCI, JOSEPH SANTUCCI, MICHAEL SANTUCCI, THERESA SANTUCCI AND TIMOTHY SANTUCCI, MINORS, EDWARD J. SCANLON, HEATHER V. SCANLON, HEATHER V. SCANLON, AS GUARDIAN AD LITEM FOR CHAD SCANLON, DIERDRE LEARY AND DREW LEARY, MINORS, JAMES F. SMITH, JR., MARGARET SMITH, MARIE SMITH, JAMES F. SMITH, JR. AND MARIE SMITH, AS GUARDIANS AD LITEM FOR DONNA SMITH, A MINOR, RICHARD SPAFFORD, SUSAN SPAFFORD, SUSAN

SPAFFORD, AS GUARDIAN AD LITEM FOR RICHARD SPAF-
FORD, JR., RONALD SPAFFORD AND WENDI SPAFFORD,
MINORS, BERTHA B. TIER, JOHN E. TIER, CHRISTOPHER
VANDERKAM, MARK E. VANDERKAM, PATRICIA VANDER-
KAM, EDWARD VANDERKAM, MARK E. VANDERKAM, AS
GUARDIAN AD LITEM FOR LYNN VANDERKAM WAGNER, A
MINOR, BENJAMIN WEDEKIND, FRANK WEDEKIND, KEVIN
WEDEKIND, MARY WEDEKIND, KURT WEDEKIND, PLAIN-
TIFFS–APPELLANTS, v. EXXON CORPORATION, A CORPORA-
TION OF THE STATE OF NEW JERSEY DOING BUSINESS AS
EXXON CO., USA; INNCO FUELS, INC., A CORPORATION OF
THE STATE OF NEW JERSEY; CONWAY AUTO, INC., A COR-
PORATION OF THE STATE OF NEW JERSEY; RICHARD E.
RITCHIE AND SUSAN M. RITCHIE, TRADING AS LACEY
EXXON; LACEY TOWNSHIP, A MUNICIPAL CORPORATION
OF NEW JERSEY; POINT BAY FUEL, INC., A CORPORATION
OF THE STATE OF NEW JERSEY; GARDEN STATE PARK-
WAY AUTHORITY; JERSEY CENTRAL POWER AND LIGHT
COMPANY, A CORPORATION OF THE STATE OF NEW JER-
SEY; CHARLOTTE W. RULE; KALSCH–FORTE OIL CO., INC.,
A/K/A K–FORTE OIL CO., A CORPORATION OF THE STATE OF
NEW JERSEY; "JOHN DOE" DEFENDANTS B THROUGH Z;
"JOHN DOE" DEFENDANTS 4 THROUGH 10; * * "JOHN ROE";
DEFENDANTS A THROUGH Z; "JOHN ROE" DEFENDANTS 1
THROUGH 10, * *RULES TEXACO, INC., DEFENDANTS, AND
TEXACO REFINING AND MARKETING INC., IMPROPERLY
DESIGNATED AS TEXACO CORPORATION, A CORPORATION
OF THE STATE OF DELAWARE; DONALD W. RULE, IMPROP-
ERLY IMPLEADED AS THE ESTATE OF DONALD W. RULE,
T/A RULE'S SERVICE STATION, DEFENDANTS–RESPON-
DENTS.

Argued October 10, 1995—Decided July 9, 1996.

*Alan H. Sklarsky* argued the cause for appellants (*Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano* and

*Valore Law Firm*, attorneys; *Mr. Sklarsky* and *Carl J. Valore*, on the briefs).

*James Crawford Orr* argued the cause for respondent Texaco Refining and Marketing Inc. (*Wilson, Elser, Moskowitz, Edelman & Dicker*, attorneys; *Mr. Orr* and *Joseph A. Gallo*, on the briefs).

*Donald W. Rule* submitted a letter in lieu of brief pro se joining in the brief submitted by respondent Texaco Refining and Marketing Inc.

*Michael D. Loprete* submitted a brief on behalf of amicus curiae The American Petroleum Institute (*Crummy, Del Deo, Dolan, Griffinger & Vecchione*, attorneys; *Richard E. Wallace, Jr.*, a member of the District of Columbia bar and *Alan M. Grimaldi*, a member of the Maryland bar, of counsel).

*Steven J. Picco* submitted a brief on behalf of amicus curiae New Jersey Fuel Merchants Association (*Picco Herbert Kennedy*, attorneys; *Mr. Picco, Stacy Cohen* and *Diane A. Davis*, on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal raises the issue whether an oil company should be liable for groundwater contamination because of the activities of an independently-owned and operated gas station that sold the oil company's products. Plaintiffs, residents of Lacey Township, claim that leaks and spills that occurred between 1959 and 1975 at a gas station owned and operated by defendant, Donald W. Rule, contaminated their wells. Under theories of negligence, nuisance and strict liability, plaintiffs sued Rule and Texaco Corporation (Texaco), a major oil company, for personal injuries, emotional and mental distress, loss of use and enjoyment of property, and economic and financial harm. Plaintiffs also named as defendants Kalsch–Forte Oil Co., Inc. (Kalsch–Forte), a distributor of Texaco's products; Richard and Susan Ritchie, who purchased the station from Rule in 1975 and converted it into an Exxon station; and Exxon Corporation (Exxon). Before trial, plaintiffs dismissed

their claims against Kalsch–Forte, which was no longer in business. After the trial court granted summary judgment dismissing most of plaintiffs' claims against Exxon and the Ritchies, plaintiffs settled their remaining claims with those defendants.

The appeal resolves into two basic issues. The first concerns Texaco's liability to plaintiffs for injuries to persons and property resulting from groundwater contamination caused by Rule's operation of the gas station. This issue subdivides into three questions. The first involves the vicarious liability of a principal for an apparent agent. The second concerns the liability of an employer for an independent contractor that has created a nuisance or is conducting inherently or abnormally dangerous activities. Finally, plaintiffs argue that in the interest of distributive justice, Texaco, as a nationwide distributor of petroleum products, should be liable for harms caused by the discharge of its products when service station operators and suppliers are uninsured or otherwise unable to satisfy damages. The second basic issue is whether the trial court erred by excluding testimony of plaintiffs' petroleum expert as an inadmissible net opinion.

The Law Division instructed the jury that it could find Texaco liable for Rule's negligence if it found that Rule had apparent authority to operate as Texaco's agent. It further charged that the jury could find Texaco strictly liable under the Spill Act for leaks in underground storage tanks, if it found that the tanks had leaked and that Texaco owned them. The jury found that Rule was not negligent, that the tanks did not leak, and that Kalsch–Forte, not Texaco, owned them. Consequently, the jury returned a verdict of no cause for all defendants.

The Appellate Division affirmed the judgment in favor of Texaco, finding no basis for apparent-authority liability and no private right of action for damages claimed by plaintiffs under the Spill Act. 279 *N.J.Super.* 5, 26–27, 36–37, 652 *A.*2d 178 (1994). It reversed and remanded for retrial the claims against Rule on issues of negligence, nuisance, and strict liability. In reversing, the Appellate Division directed the trial court to determine wheth-

er operating a gas station is an abnormally dangerous activity under the *Restatement (Second) of Torts* § 520 (1969). 279 *N.J.Super.* at 24, 37–39, 652 *A.2d* 173. The Appellate Division also affirmed the Law Division's ruling not to admit testimony by plaintiffs' expert.

We granted plaintiffs' petition for certification, 140 *N.J.* 326, 658 *A.2d* 726 (1995), and now affirm substantially for the reasons stated by the Appellate Division. We explicitly address an issue that the Appellate Division treated implicitly, the liability of Texaco for the conduct of an abnormally dangerous activity.

## I

From 1959 to 1975, Rule owned and operated a gas station at 930 Lacey Road in Lacey Township. Rule sold Texaco products, displayed Texaco signs, and used Texaco's bookkeeping procedures and credit card system. In 1975, Rule sold the station to Ritchie, who sold Exxon products. The Ritchies also bought the underground tanks from Kalsch–Forte.

In December 1984, residents of the neighboring Barnegat Pines subdivision complained of foul-smelling well water. Investigators from the New Jersey Department of Environmental Protection (NJDEP) found gasoline-related contamination in fourteen residential wells. NJDEP identified Ritchie's gas station as the most likely source and defined a "red line area" in which residential wells were contaminated or threatened with contamination.

Twenty-five years earlier, in 1959, Rule and his father had built the service station according to plans provided by Atlantic Richfield Oil Co. (Arco). Because of a dispute with Arco over the number of service bays, Rule abandoned his plans to operate the station for Arco. While the station was still under construction, Forte and Matthews, who were employees of Kalsch–Forte, offered to supply the Rules with products, equipment, and services supplied by Texaco.

Rule agreed to sell Texaco products and operate the station as "Rule's Texaco." Kalsch–Forte supplied Rule with Texaco products and installed the underground gasoline storage tanks and other equipment. Rule obtained uniforms and Texaco patches from a uniform dealer in Philadelphia. After his father died in 1961, Rule incorporated the business as "Rule's Service Station."

Kalsch–Forte leased the underground tanks and other equipment to Rule for the nominal rent of one dollar per year, a sum that Rule did not remember ever paying. No written agreement evidenced the 1959 understanding between Rule and Kalsch–Forte. In 1972, however, when Kalsch–Forte supplied Rule with new underground gasoline storage tanks, the parties entered into a written "Customer's Equipment Lease." The lease required Rule to maintain the equipment and signs advertising Kalsch–Forte brands of products. In addition to the gasoline tanks, the lease listed the fuel oil and kerosene tanks, lights and light poles, air compressor, and lift as Kalsch–Forte equipment. The name "Texaco" appeared on the signs, the pumps, the products, and attendants' uniforms.

Kalsch–Forte increased the underground gasoline storage capacity at the service station from 6,000 gallons in 1959 to 17,000 gallons in 1975, when Rule sold the station. During that time, Kalsch–Forte distributed products to Rule, except for three to six months during the oil crisis in the 1970s when Texaco directly supplied Rule. Nothing in the record indicates any above-ground spills during the time when Rule operated the station.

In August 1975, Rule sold the station to the Ritchies. Initially the Ritchies continued to purchase Texaco petroleum products from Kalsch–Forte and operate as a Texaco station. In October 1975, however, they purchased the underground tanks and other equipment from Kalsch–Forte and converted to an Exxon station. The Ritchies installed new underground storage tanks and fuel islands in 1981. They removed the old fuel islands, pumps, and all underground tanks except for one, which they drained and filled

with concrete. One of the tanks showed signs of extensive corrosion.

In December 1984, residents of Barnegat Pines complained to the Ocean County Health Department (OCHD) about odors in their well water. OCHD tested a number of wells, finding fourteen to be contaminated with gasoline-related volatile organic compounds (VOCs). VOC concentrations found in many residential wells exceeded NJDEP's acceptable limits. The NJDEP circumscribed a contaminated area covering fifteen blocks and determined that Rule's Service Station was the most likely source of contamination.

After unsuccessfully seeking to maintain this case as a class action, plaintiffs filed an amended consolidated complaint against Exxon, Texaco, the Rules, the Ritchies, Kalsch–Forte, and others. An initial hydrogeologic study commissioned by Exxon revealed that contamination of groundwater derived from five potential sources. Consequently, in March 1989, the court issued a case management order that divided plaintiffs into three zones according to the source and flow of contamination. Plaintiffs in the western zone, filed a complaint against Rule, Texaco, Kalsch–Forte, the Ritchies, and Exxon.

Exxon commissioned a subsequent hydrogeologic study that plaintiffs' experts endorsed. The subsequent study revealed that discharges occurring after the Ritchies bought the station could not have affected wells located outside a one-and-a-half block radius from the station. On January 5, 1990, the Law Division granted summary judgment for Exxon and the Ritchies, dismissing all claims except those asserted by plaintiffs living within that radius of the station. Texaco, which had asserted a cross-claim against Ritchie, did not oppose the summary-judgment motion. Exxon and the Ritchies settled with the remaining plaintiffs, who stipulated to a dismissal with prejudice.

At trial, plaintiffs sought to prove that discharges of gasoline and other petroleum products from the gas station between 1959 and 1975, when Rule operated the Texaco station, contaminated

their wells. In support of their allegations, plaintiffs sought to introduce testimony of Albert D. Young, a petroleum distribution consultant and retired Exxon executive.

At a *"Rule 8"* hearing, conducted under *Evidence Rule* 8 (now *N.J.R.E.* 104(a)), Young testified that he believed that above-ground gasoline spills "probably happened more frequently than not" during Rule's ownership of the station. According to Young, in the 1960s, as the capacity of fuel trucks increased, the trucks commonly pumped more fuel into the tanks than they could hold, thereby causing overflow and spills. He theorized that such spills, which were common during the 1960s and 1970s, had occurred at Rule's station. Young postulated that soil contamination in the areas around the underground tank and fuel islands indicated that spills had occurred during the delivery of gas or the pumping of fuel to customers' cars between 1959 and 1981. Young admitted on cross-examination, however, that he had never visited the service station, had never spoken with Rule or any of his employees, knew nothing about the operating practices at the station, and knew of no spills or leaks having occurred at the station from 1959 to 1981.

The trial court excluded Young's testimony as a "net opinion." Although the court found Young qualified as an expert on petroleum-product distribution, it concluded that he was not qualified as a hydrologist. Hence, Young was unqualified to render an opinion on the likelihood that any of the spills would reach the ground water. Because Young could not exclude spills that occurred in the period from August 1975, when the Ritchies purchased the station, to 1981, when they replaced the tanks, he could not render an opinion indicating Rule as the source of contamination.

At trial, Rule and Texaco moved to submit testimony of Lloyd LaBrie, a consulting engineer. LaBrie stated that activities at the station after 1975 could have contaminated some of plaintiffs' wells. LaBrie's testimony conflicted with the findings of the court when granting summary judgment for Exxon and the Ritchies. According to LaBrie, post–1975 discharges from the station could

have contaminated the residential wells located beyond the one-and-a-half block radius. Over plaintiffs' objections, the trial court ruled that the summary judgment for Exxon and the Ritchies did not preclude Texaco from arguing that the contamination was due to the conduct of third parties. The court, however, required LaBrie to base his testimony on the same groundwater velocity rates used by experts for Exxon and plaintiffs.

In its charge, the court instructed the jury that it could find Rule liable under theories of negligence or strict liability. Further, the jury could find Texaco strictly liable, if it first found that Texaco had owned the underground tanks and pipelines and that they had leaked. Finally, the court instructed that the jury could find Texaco vicariously liable, if it found that Rule had been negligent and an apparent-agency relationship existed between Rule and Texaco.

In the Appellate Division, plaintiffs argued that the trial court should not have allowed Texaco to introduce evidence that post–1975 discharges could have caused contamination outside the Exxon plume. The Appellate Division agreed, concluding that Texaco's failure to oppose the summary judgment for Exxon and Ritchie estopped Texaco from urging that the discharges had occurred when the station was identified with Exxon. 279 *N.J.Super.* at 23, 652 *A.*2d 178. As to Texaco, the court ruled that the error was harmless, because the jury had found that Kalsch–Forte, not Texaco, owned the underground tanks and pipelines. As to Rule, however, the error was not harmless, because it could have led the jury to believe that post–1975 discharges were the sole cause of the contamination. *Id.* at 23–24, 652 *A.*2d 178. Hence, the court reversed and remanded for a new trial as to Rule. *Id.* at 24, 652 *A.*2d 178.

Plaintiffs also argued that absent LaBrie's testimony the jury could have found Texaco vicariously liable under the doctrine of apparent authority. The Appellate Division disagreed, finding no evidence that Texaco had a direct duty to guard against contamination of the groundwater. *Id.* at 24–25, 652 *A.*2d 178. The court

also found that Texaco was not vicariously liable because "[p]lain-
tiffs produced absolutely no evidence that they in any manner
relied upon the fact that Rule's station was a Texaco station." *Id.*
at 26, 652 *A.*2d 178.

Plaintiffs next argued that the trial court erred in barring
testimony by plaintiffs' expert, Mr. Young, concerning the stan-
dard of care in the industry, occurrence of spills at the station
during Rule's ownership, and the relationship between Rule and
Texaco. The Appellate Division disagreed, holding that the trial
court properly excluded the testimony as a net opinion. *Id.* at 30–
31, 652 *A.*2d 178.

Plaintiffs also argued that the trial court erroneously charged
the jury that the Spill Act imposed strict liability for discharges
from underground tanks only. According to plaintiffs, the Spill
Act applies to discharges above, as well as those below, the
ground. Although the Appellate Division agreed that the trial
court had erred, it found the error harmless. *Id.* at 37, 652 *A.*2d
178. The Appellate Division acknowledged that the Spill Act
creates a private cause of action for recovery of damages caused
by discharges of petroleum products, but held that the Act limits
recovery to clean-up and removal costs. We agree. Such a cause
of action does not extend, however, to damages arising from
emotional distress, enhanced risk of disease, loss of enjoyment of
property, and other economic and financial harm. *Id.* at 36–37,
652 *A.*2d 178.

Finally, the Appellate Division noted that the trial court, in
holding that Rule's operation of the service station was not an
abnormally dangerous activity, incorrectly failed to apply factors
set forth in sections 519–20 in the *Restatement of Torts (Second).*
The Appellate Division acknowledged that plaintiffs' decision not
to appeal this holding may have been influenced by the fact that
the trial court had charged strict liability under the Spill Act.
Consequently, the Appellate Division directed the trial court, on
remand, specifically to "apply the *Restatement* factors to deter-
mine whether there is a jury issue concerning strict liability

against Rule on the abnormally-dangerous activity theory." *Id.* at 37–38, 652 *A.*2d 178. Although the Appellate Division did not explicitly address Texaco's liability on that theory, it did so implicitly by concluding that "there was no factual or legal basis to hold Texaco liable on a vicarious liability theory." *Id.* at 27, 652 *A.*2d 178.

II

Plaintiffs claim that Texaco is vicariously liable for the discharge from Rule's service station of petroleum products into the groundwater. They predicate Texaco's liability on two theories. First, plaintiffs claim that Texaco held out Rule as its agent, thereby constituting him as its apparent agent. Their second claim is that Rule, in operating the gas station, created a nuisance or was engaged in inherently or abnormally dangerous activity as Texaco's independent contractor. The Appellate Division held that Texaco is not liable under the theory of apparent agency. 279 *N.J.Super.* at 26–27, 652 *A.*2d 178. We affirm that holding substantially for the reasons stated by the Appellate Division. *Ibid.* The issue of Texaco's alleged liability for conduct of an inherently or abnormally dangerous activity requires further discussion.

 Ordinarily, an employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract. *Majestic Realty v. Toti Contracting Co.,* 30 *N.J.* 425, 431, 153 *A.*2d 321 (1959); *Restatement (Second) of the Law of Torts* § 409 (1969) (*Restatement*). The employer remains liable, however, for work that is inherently dangerous. *Majestic Realty, supra,* 30 *N.J.* at 435, 153 *A.*2d 321; *Restatement* §§ 416, 427; *see also* 41 *Am.Jur.*2d *Independent Contractors* § 52; Francis M. Dougherty, Annotation, *Liability of Employer with Regard to Inherently Dangerous Work for Injuries to Employees of Independent Contractor,* 34 *A.L.R.*4th 914, 920 (1984). Similarly, an employer is strictly liable for harm resulting from the performance by an independent contractor of abnormally

dangerous work. *Majestic Realty, supra,* 30 *N.J.* at 436, 153 *A.*2d 321; *Restatement* § 427A; 41 *Am.Jur.*2d *Independent Contractors* § 63; *see also N.J. Dept. of Environmental Protection v. Ventron Corp.,* 94 *N.J.* 473, 491, 468 *A.*2d 150 (1983) (holding land owners engaging in abnormally dangerous activity strictly liable for resulting harm); *Restatement* §§ 519, 520 (setting out strict liability rule and test for abnormally dangerous activity). The employer's liability stems from a non-delegable duty to exercise reasonable care when performing the inherently or abnormally dangerous activity, a duty that the employer can not discharge by hiring an independent contractor. *Majestic Realty, supra,* 30 *N.J.* at 438–39, 153 *A.*2d 321; 41 *Am.Jur.*2d *Independent Contractors,* §§ 53, 63.

■ Essential to the application of these rules, however, is the existence of an independent-contractor relationship. An independent contractor is a person "who, in carrying on an independent business, contracts to do a piece of work according to his own methods without being subject to the control of the employer as to the means by which the result is to be accomplished but only as to the result of the work." *Wilson v. Kelleher Motor Freight Lines, Inc.,* 12 *N.J.* 261, 264, 96 *A.*2d 531 (1953); *see also AT & T v. Winback and Conserve Program, Inc.,* 42 *F.*3d 1421, 1435 (3d Cir.1994) (defining independent contractor), *cert. denied,* —— *U.S.* ——, 115 *S.Ct.* 1838, 131 *L.Ed.*2d 757 (1995).; *Restatement (Second) of Agency* § 2(3) (1958) (same); 41 *Am.Jur.*2d *Independent Contractors* § 1 (same). The employer-independent contractor relationship, then, differs from the employer-employee relationship, in which the employer controls not only the result, but also the means of achieving it. *Wilson, supra,* 12 *N.J.* at 264, 96 *A.*2d 531; *AT & T, supra,* 42 *F.*3d at 1435; *Restatement (Second) of Agency* § 2(2).

■ Plaintiffs' claim against Texaco fails for the basic reason that they have failed to prove that Texaco hired Rule as an independent contractor. Except for the three- to six-month period during the early 1970s when Texaco supplied Rule with gaso-

line, Rule had no direct relationship with Texaco. Rule dealt exclusively with Kalsch–Forte. A contractual relationship existed between Rule and Kalsch–Forte, not between Rule and Texaco. Rule leased the tanks, pumps, and other equipment from Kalsch–Forte, not Texaco. Indeed, the jury found that Kalsch–Forte, not Texaco, owned the tanks. Neither Kalsch–Forte nor Texaco exercised control over the operation of the service station. Rule simply purchased Texaco products from Kalsch–Forte.

The record is devoid of information about the relationship between Kalsch–Forte and Texaco. Nothing supports plaintiffs' allegations that Texaco hired Rule as an independent contractor to sell Texaco products. Hence, we need not consider whether Rule's operation of the service station was either an inherently or abnormally dangerous activity, or whether Rule created a nuisance at the station. Our holding that Rule was not an independent contractor makes explicit the premise implicit in the Appellate Division's conclusion that Texaco was not vicariously liable for Rule's operation of the service station. 279 *N.J.Super.* at 23–24, 652 *A.*2d 178.

Plaintiffs also urge us to "fashion a common law basis of recovery against major oil companies when defunct suppliers and uninsured gasoline service station owners cause [surface and ground water] contamination." In effect, they invite us to constitute major oil companies as insurers of due care at all service stations, regardless of the relationship between the oil company and the service station operator or the degree of control exercised by the oil company over the operations at individual stations. We decline the invitation. Nothing in the record justifies the imposition of liability on oil companies for harms caused by conduct over which they have no reasonable means of influence or control. *See Balsam v. Delma Engineering Corp.,* 139 *A.D.*2d 292, 532 *N.Y.S.*2d 105, 108–09, *appeal dismissed in part, denied in part* 73 *N.Y.*2d 783, 536 *N.Y.S.*2d 741, 533 *N.E.*2d 671 (1988) (holding that oil company did not have sufficient control over service station activities to be liable for injuries caused by dangerous condition at

the station). Adequate statutory and common-law remedies exist for parties who suffer injury from the discharge of petroleum products into surface and ground water.

Finally, plaintiffs appeal the Appellate Division's decision to affirm the trial court's ruling that barred testimony from plaintiffs' expert, Albert D. Young, concerning industry practices, the standard of care, and the relationship between Rule and Texaco. We affirm the Appellate Division substantially for the reasons stated in its opinion. 279 *N.J.Super.* at 28–31, 652 *A.*2d 178.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—5.

*Opposed*—None.