■ KAREN KOZAK et al., Appellants, v BROADWAY JOE's et al., Respondents. (Action No. 1.) KAREN KOZAK et al., Appellants, v DON GREENE ENTERPRISES, INC., Respondent. (Action No. 2.) [745 NYS2d 139] —Peters, J. Appeals (1) from an order and an amended order of the Supreme Court (Ferradino, J.), entered June 14, 2001 and November 27, 2001 in Saratoga County, upon a dismissal of the complaint at the close of plaintiffs' case in action No. 1, and (2) from an order of said court, entered October 30, 2001 in Saratoga County, upon a dismissal of the complaint at the close of plaintiffs' case in action No. 2.

On January 25, 1998, plaintiff Karen Kozak (hereinafter plaintiff) and her husband attended a Superbowl party at defendant Broadway Joe's (hereinafter Broadway), located in Congress Plaza in the City of Saratoga Springs, Saratoga County. After the party, plaintiff walked through the parking lot with her husband and allegedly slipped and fell on a patch of ice, hitting her head against the pavement. As a result of her injuries, plaintiff and her husband, derivatively, commenced action No. 1 against Broadway, the restaurant organizing the Superbowl party, defendant DCG Development Company, Inc. (hereinafter DCG), the property manager for Congress Plaza, and defendant Scott C. Crandall, the contractor hired to perform snow plowing services in Congress Plaza. Plaintiff, and her husband derivatively, thereafter commenced action No. 2 against defendant Don Greene Enterprises, Inc. (hereinafter D&G Enterprises), owner of Congress Plaza, alleg-

ing that D&G Enterprises was negligent in failing to correct the dangerous icy condition on its property. A jury trial on both actions ensued and, at the close of plaintiffs' case, all defendants moved to dismiss the complaints. Supreme Court granted defendants' motions and these appeals ensued.

Dismissal of a complaint at the close of evidence "is proper only when there are no disputed issues of fact and the nonmovant has failed to make out a prima facie case, so that by no rational process could a jury find in such party's favor" (*Winslow v Freeman*, 257 AD2d 698, 699; *see, Rhabb v New York City Hous. Auth.*, 41 NY2d 200, 202). In addressing Supreme Court's dismissal, we recognize that "[l]iability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of such premises" (*Balsam v Delma Eng'g Corp.*, 139 AD2d 292, 296, *lv dismissed and denied* 73 NY2d 783) and that, "[w]ithout possession, or a right to maintain or control a common parking area, [a] tenant [ordinarily] owes no duty of care with respect to any unsafe condition existing there" (*Masterson v Knox*, 233 AD2d 549, 550). Yet, "liability may be found where there is some indication that the tenant 'created the dangerous condition, owned or retained any control over the parking lot, or had the authority to correct the condition'" (*Vander Veer v Henderson*, 267 AD2d 584, 586, quoting *Masterson v Knox, supra* at 550).

Reviewing the dismissal of the complaint against Broadway, we find it clear that the evidence failed to demonstrate that it owed any duty to plaintiffs with respect to the condition of the parking lot. Pursuant to the plain terms of Broadway's lease agreement, DCG was to assume all control and responsibility for the maintenance of the common areas, including the parking lot. This understanding was confirmed by Rick Eaglestone, property manager for DCG. Sue Mather, owner of Broadway, testified that none of its employees ever participated in the cleaning, shoveling or plowing of the aforementioned parking lot and that at no time was Broadway responsible for its maintenance or condition. With plaintiffs having failed to present any evidence demonstrating that Broadway created the icy condition, owned or retained any control over the parking lot or had authority to correct the condition once it found it to exist, we find Supreme Court's dismissal of the complaint against Broadway to be proper (*see, Masterson v Knox, supra* at 550).

We also agree with the dismissal of the complaint against Crandall. By the express terms of the snow plowing contract between DCG and Crandall, Crandall was responsible for monitoring the weather conditions and only plowing when ac-

cumulations reached approximately two inches. While it further specified that Crandall was required to use his reasonable judgment to plow or de-ice the subject area as needed, it again tempered that responsibility by stating that "in all cases DCG will have the option, though not the obligation to authorize the activity to commence." Moreover, the plowed snow was to be placed in specifically designated locations on DCG's premises, only to be removed by Crandall with prior permission from DCG. Testimony confirmed that DCG employees regularly removed snow, sanded, salted and put down calcium to control ice in this parking lot (*see, Borden v Wilmorite, Inc.*, 271 AD2d 864, *lv denied* 95 NY2d 767). Since Crandall, as a contractor for snow removal, will only be burdened with a duty of reasonable care to third parties if there exists a comprehensive and exclusive property maintenance obligation (*see, Espinal v Melville Snow Contrs.*, 98 NY2d 136, 139-140; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 589; *Borden v Wilmorite, Inc., supra* at 865), we find that the proof proffered by plaintiffs did not warrant this issue to remain with the jury. With no tendered evidence supporting the further theory that Crandall, through his incomplete snow removal or placement of plowed snow, somehow created or exacerbated the dangerously icy condition such that he could be found to have " 'launched a force or instrument of harm' " (*Espinal v Melville Snow Contrs., supra* at 139, quoting *H.R. Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168), this issue was also properly removed from the jury's consideration.

We do, however, find that the dismissal against D&G Enterprises and DCG was improper since a rational jury could have concluded that D&G Enterprises, as well as DCG, had constructive notice of the icy condition in the parking lot "within 'a reasonable time after the cessation of the storm or temperature fluctuations which created [the] dangerous condition' " (*Polgar v Syracuse Univ.*, 255 AD2d 780, 780, quoting *Porcari v S.E.M. Mgt. Corp.*, 184 AD2d 556, 557; *see, Antich v McPartland*, 293 AD2d 953; *Dong v Cazenovia Coll.*, 263 AD2d 606, 607; *Reinemann v Stewart's Ice Cream Co.*, 238 AD2d 845, 846). While the evidence does not demonstrate that either D&G Enterprises or DCG had actual notice of the allegedly icy condition in the parking lot, Richard Frusher, maintenance technician for DCG, testified that he observed patches of ice in the parking lot on the day before the accident and when he arrived at approximately 6:30 A.M. the next morning. He believed that the ice was caused by melting and overnight freezing. Although he testified that when he returned at 11:00 A.M. on the date of the accident, he failed to see any icy spots which needed sand-

ing and/or salting—a condition confirmed by Crandall who returned at 3:00 P.M. that same day—record evidence indicates that an employee of Broadway observed wet spots in the parking lot at approximately 5:00 P.M., which plaintiff's husband described as having turned to solid ice by 6:00 P.M.—a fact that he communicated to others at that time. With evidence that the icy condition in the parking lot existed for at least four hours between 6:00 P.M. and plaintiff's fall at approximately 10:00 P.M., a jury may have concluded that the four-hour span was a reasonable amount of time for D&G Enterprises or DCG to have had constructive notice of the icy condition, even recognizing that "a general awareness that snow or ice might accumulate is insufficient" (*Wimbush v City of Albany*, 285 AD2d 706, 707). Morever, a rational jury may also have found that these defendants were negligent in failing to make specific arrangements for continued salting and/or sanding on that particular evening when they were aware that a special late night event was scheduled at Broadway and that temperature fluctuations typically caused wet spots in the parking lot to turn to ice as they had on the prior evening. For these reasons, we would reinstate the complaints against D&G Enterprises and DCG.

Cardona, P.J., Mercure, Carpinello and Lahtinen, JJ., concur. Ordered that the order entered June 14, 2001 and the amended order entered November 27, 2001 are modified, on the law, without costs, by reversing so much thereof as granted the motion to dismiss of defendant Don Greene Enterprises, Inc.; motion denied as to said defendant; and, as so modified, affirmed. Ordered that the order entered October 30, 2001 is reversed, on the law, without costs, and motion to dismiss denied.