Giannelis v Borgwarner Morse Tec Inc. (2018 NY Slip Op 08593)





Giannelis v Borgwarner Morse Tec Inc.


2018 NY Slip Op 08593


Decided on December 13, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 13, 2018

526142

[*1]EMMANUEL P. GIANNELIS, Individually and as Executor of the Estate of HARRIET GIANNELIS, Deceased, Respondent,
v
BORGWARNER MORSE TEC INC., Appellant, et al., Defendants.

Calendar Date: October 10, 2018

Before: Garry, P.J., Lynch, Devine, Aarons and Pritzker, JJ.


Bond, Schoeneck & King, PLLC, Syracuse (Daniel J. Pautz of counsel), for appellant.
Schlather, Stumbar, Parks & Salk, LLP, Ithaca (Raymond M. Schlather of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from an order of the Supreme Court (Faughnan, J.), entered October 25, 2017 in Tompkins County, which denied a motion by defendant BorgWarner Morse TEC Inc. for summary judgment dismissing the complaint and cross claim against it.
On June 12, 2013, at around 7:20 a.m., defendant Kelly A. Elliott had just finished her shift at defendant BorgWarner Morse TEC Inc. and was driving from the plant premises via the facility's south exit when, while entering the merge lane of an abutting public road known as Warren Road, she struck and killed a bicyclist, Harriet Giannelis. Plaintiff, Giannelis' husband, subsequently commenced this action alleging that BorgWarner was negligent and reckless in maintaining the exit and in managing its employees as it relates thereto. After joinder of issue, BorgWarner moved for summary judgment dismissing the complaint and a cross claim against it. Plaintiff opposed the motion and Supreme Court, finding issues of fact with respect to duty and causation, denied BorgWarner's motion. BorgWarner appeals, and we affirm.
Generally, "'an owner of land abutting a public sidewalk does not, solely by reason of being an abutter, owe to the public a duty to keep the [property] in a safe condition'" (Melamed v Rosefsky, 291 AD2d 602, 603 [2002], quoting Little v City of Albany, 169 AD2d 1013, 1013 [1991]; accord Oles v City of Albany, 267 AD2d 571, 571 [1999]). "There are, however, three exceptions to this general rule, applicable when the abutting owner (1) uses the area for a 'special purpose,' (2) creates the dangerous condition, or (3) violates a statute or ordinance requiring the abutter to maintain the area" (Oles v City of Albany, 267 AD2d at 571-572 [internal quotation marks and citation omitted]). Here, BorgWarner satisfied its prima facie burden demonstrating a lack of duty based upon its status as an abutting landowner and the fact [*2]that the accident occurred on a public road (see Fitzgerald v Adirondack Tr. Lines, Inc., 23 AD3d 907, 908 [2005]; Harris v FJN Props., LLC, 18 AD3d 1089, 1090 [2005]). In opposition, plaintiff submitted proof that established a material question of fact as to both the special use exception and the creation of the dangerous condition exception.
A finding of a special use arises where there is a modification to the public sidewalk, such as the installation of a driveway, or a variance of the sidewalk to allow for ingress and egress (see Deans v City of Buffalo, 181 AD2d 1015, 1015 [2002]; Balsam v Delma Eng'g Corp., 139 AD2d 292, 298 [1988], lv dismissed and denied 73 NY2d 783 [1988]), that was "constructed in a special manner for the benefit of the abutting owner or occupier" (Appio v City of Albany, 144 AD2d 869, 870 [1988]; see Reid v Auto Tune Ctrs., 202 AD2d 1047, 1047 [1994]). The owner must derive a "unique benefit unrelated to the public use" (Moons v Wade Lupe Constr. Co., Inc., 43 AD3d 501, 502 [2007]; see Kaufman v Silver, 90 NY2d 204, 207 [1997]), and the court will also consider whether there is an exclusive use (see Minot v City of New York, 230 AD2d 719, 720 [1996]; Balsam v Delma Eng'g Corp., 139 AD2d at 298). Contrary to BorgWarner's claims that it uses Warren Road in the same manner as the general public, there was substantial evidence in the record, submitted by plaintiff, suggesting that the public roadway in question had been altered for the exclusive benefit of BorgWarner to facilitate its relocation. In fact, it is evident that the merge lane, which was clearly designed for employees turning right onto Warren Road when exiting the south exit of BorgWarner, would be used differently by those motorists than by motorists already on Warren Road.
As to whether BorgWarner created the dangerous condition, initially, BorgWarner is correct in noting that, in the case of vehicular accidents, there is "no duty to prevent negligent operation [that] may be imposed upon one who does not control the [tortfeasor]" (Matthews v Scotia-Glenville School Sys., 94 AD2d 912, 912 [1983], lv denied 60 NY2d 559 [1983]). However, a duty may be created to control the conduct of a person when a special relationship exists, such as master-servant (see generally Cavanaugh v Knights of Columbus Council 4360, 142 AD2d 202 [1988], lv denied 74 NY2d 604 [1989]). Here, not only did BorgWarner control the flow of traffic from its private parking lot at the south exit via a control gate, but BorgWarner also placed a yield sign on BorgWarner South Drive for motorists entering the merge lane on Warren Road. Also, as an employer, BorgWarner had the opportunity to conduct training or communicate in some way to its employees to use due caution and follow traffic laws when using the south exit. In fact, BorgWarner did provide training programs, including obeying traffic signs, however, none were specific to the use of the south exit. This evidence raises a question of fact as to the extent of BorgWarner's control over its employees and whether this control is sufficient to establish a duty (see Fernandez v Rustic Inn, Inc., 60 AD3d 893, 896 [2009]; compare Pulka v Edelman, 40 NY2d 781, 784 [1976]). Further, although it is true that, at the time of the accident, Elliott had completed her shift and was going home, activity arguably outside the scope of her employment, exiting the facility was also "necessary or incidental to such employment," and her actions were still controlled in part by the gate and signage installed by BorgWarner (Holmes v Gary Goldberg & Co., Inc., 40 AD3d 1033, 1034 [2007] [internal quotation marks and citation omitted]). Therefore, inasmuch as Elliott was an employee, BorgWarner retained some degree of control and, under these circumstances, assuming BorgWarner created a dangerous condition, it would not be unreasonable or unduly burdensome to impose a duty (cf. Pulka v Edelman, 40 NY2d at 784).
Supreme Court also correctly determined that BorgWarner failed to establish a prima facie case regarding proximate cause. Notably, "'there may be more than one proximate cause of an accident'" (O'Brien v Couch, 124 AD3d 975, 977 [2015], quoting Ayotte v Gervasio, 186 AD2d 963, 964 [1992], affd 81 NY2d 1062 [1993]), and, for a defendant to make out a prima facie case, it must establish "freedom from comparative fault as a matter of law" (Palmeri v Erricola, 122 AD3d 697, 698 [2014]; accord McKenna v Reale, 137 AD3d 1533, 1534 [2016]). BorgWarner's submissions failed to do so inasmuch as a report done by a police investigator did not address the placement of the yield sign or overall design of the south exit road. Elliott's deposition testimony indicated that she relied on the gate and the signage in guiding her approach onto Warren Road. Therefore, it was incumbent on BorgWarner to negate claims that it was [*3]negligent in regard to the design of the south exit road and its instructions to its employees, and the failure to do so is fatal to the summary judgment motion (see Palmeri v Erricola, 122 AD3d at 698; McKenna v Reale, 137 AD3d at 1534).
Garry, P.J., Devine and Aarons, JJ., concur.




Lynch, J. (dissenting).


I respectfully dissent. "Drivers have a duty to exercise reasonable care under the circumstances presented and to see and respond to the conditions in the roadway within their view" (McKenna v Reale, 137 AD3d 1533, 1534 [2016] [citations omitted]; see Blanchard v Chambers, 160 AD3d 1314 [2018]; Rivera v Fritts, 136 AD3d 1249, 1251 [2016]; see also PJI 2:77). In her deposition, defendant Kelly A. Elliott explained that she utilized the facility's south exit for more than 10 years. On the morning of the accident, she believed that she first stopped at the exit control gate and that no cars were in front of her. The gate was designed to allow only one car at a time to exit the facility. She was also familiar with the yield sign adjacent to the start of the southbound merge lane. Once she proceeded beyond the gate, she turned to the right into the merge lane. While doing so, she looked over her left shoulder to see if any traffic was approaching. She did not see any vehicles but heard a "thump on the car," which was caused by the impact with the bicyclist, Harriet Giannelis. By her own account, Elliot "never saw [Giannelis] until she was on the hood of the car." The record shows that Elliott's vehicle struck the rear side of Giannelis' bicycle with the area of impact beyond the yield sign and within the merge lane.
I am mindful that there can be more than one proximate cause of an accident. That said, in view of Elliott's familiarity with the intersection, her failure to observe Giannelis riding a bicycle right in front of her and her disregard of a yield sign that required her to either slow down or stop as necessary for any pedestrian crossing the roadway (see Vehicle and Traffic Law §§ 1142 [b]; 1172 [b]), it is my view that the role of defendant BorgWarner Morse TEC Inc. in the design of the intersection or in the safety instructions provided to its employees cannot be deemed a proximate cause of Giannelis' tragic injuries (see Atkinson v County of Oneida, 59 NY2d 840, 842 [1983]). Consequently, Borgwarner's motion for summary judgment dismissing the complaint and any cross claims against it should have been granted.
ORDERED that the order is affirmed, with costs.